IRENE ROSS, RESPONDENT, v. CHANDIS WILSON, APPELLANT.—163 S. W. (2d) 342.

Kansas City Court of Appeals. May 25, 1942.

Rehearing Denied June 15, 1942.

*John J. Robinson, Ernst & Williams, M. J. Henderson, Thos. E. Deacy* and *Henderson, Deacy, Henderson & Swofford* for appellant.

*Dubois & Miller* and *Conkling & Sprague* for respondent.

SHAIN, P. J.—This is an appeal from a judgment of $3000 re-covered by plaintiff below for personal injuries and other loss occasioned by the alleged negligence of defendant in causing an automobile which he was driving to collide with the automobile of plaintiff. At the trial the case was submitted to the jury in behalf of plaintiff on the issue of the defendant's negligence in driving at a high and excessive rate of speed under the circumstances, and in failing to yield the right of way. Instructions given at the request of defendant submitted the issues of plaintiff's contributory negligence and that of her driver in failing to yield the right of way, in failing to keep a lookout, in failing to have her automobile under control, and in driving at a high and dangerous rate of speed.

This cause was argued and submitted and an opinion by BOYER, C., was handed down at the January, 1942, Call of this court. Thereafter a rehearing was granted and cause submitted again at the April, 1942, Call of this court.

Upon a reconsideration we reach the same conclusion as before, and adopted the opinion by BOYER, C., as handed down January 5, 1942. with the exception of paragraphs reviewing assignment of error as to plaintiff's Instruction No. 5.

The first point urged by appellant is that the court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence for the reason that plaintiff and her husband, who was driving the automobile at the time of plaintiff's injury, were guilty of contributory negligence as a matter of law. The facts will be stated with this assignment in view.

The collision occurred near midnight at the intersection of Main Street and Alanthus Avenue in the City of Stanberry, July 16, 1938. Main Street is an east and west paved thoroughfare thirty feet in width, and Alanthus Avenue, north of Main Street, is also a paved thoroughfare thirty feet in width to the point of intersection with Main Street at right angles. State Highway No. 169 entering Stanberry from the east is over Main Street westwardly to the intersection, and thence northerly over Alanthus Avenue. The intersection of these two streets is thirty feet square, practically level, and at the bottom of a gradual slope of both streets for approximately one block, the descending slope of Alanthus Avenue being of a greater degree than that of Main Street. There were highway slow signs posted on each street about one block from the intersection, and

the City of Stanberry had erected signs limiting speed to twenty-five miles.

Plaintiff and her husband resided in Stanberry; and at the time of the collision they were on their way home from Cameron, Missouri, where they had attended a political meeting. Plaintiff owned a Ford automobile which her husband was driving. They were proceeding westwardly on Main Street intending to drive across Alanthus Avenue and continue westwardly on Main Street. While crossing the intersection and when plaintiff's car was about twenty-seven feet in the intersection and near the west side thereof, it was struck in the right side by an automobile driven by defendant from the north down Alanthus Avenue, and thrown ninety or more feet from the point of collision where it landed upside down on the east side of Alanthus Avenue, south of Main Street.

Plaintiff and other witnesses testified to the facts above recited. Plaintiff further stated that in approaching the intersection the speed of her car had been reduced to twenty-five miles per hour one block east of the intersection, and about the time they were just entering the intersection she saw the lights of defendant's car up the hill on Alanthus Avenue about the distance of a city block; she could not tell exactly where the car was nor how fast it was going; at that time it did not appear to her that there was any danger of a collision, and that her car proceeded straight across the intersection at a speed of twenty-five miles or less. She estimated that defendant's car was being driven at the rate of 60 miles per hour and said it came like a flash, and that she could tell it was going awful fast, and that it did not slow up any from the time she saw it, until the time of the collision.

On cross-examination, she stated that she and her husband were just entering the intersection when she saw the lights of the other car, and that she might have seen the lights through a driveway of a filling station when she was five or ten feet from the intersection.

Plaintiff's husband testified that he was driving the car in which they were riding on the right-hand side of Main Street and within three or four feet from the curb while approaching the intersection, and at a rate of about twenty or twenty-five miles per hour; that he saw the lights of the other car on Alanthus Avenue when the car he was driving was ten or twelve feet in the intersection; that the other car appeared to be at the top of the hill, and from appearances he was satisfied that he had time to cross the intersection; that he continued at the same rate of speed and when near the west line of the intersection and within about three feet from the north line of Main Street, the car driven by defendant collided with plaintiff's car striking it near the front end of the running board on the right side; he estimated that defendant's car was approaching the intersection at a rate of sixty miles per hour, and that the car he was driving

was thrown a distance of ninety-five feet from the point of collision to where the car stopped upside down in the ditch on the east side of Alanthus Avenue, south of the intersection.

On cross-examination, he stated that he was familiar with the intersection in question; that it was dangerous; that he drove into the intersection at a rate of twenty to twenty-five miles per hour; that he was ten feet in the intersection when he saw the lights of the defendant's car up the hill to his right 175 to 200 feet; it was a rainy night and the pavement was slippery. He also testified that when he was 200 feet from the intersection he was driving at the rate of thirty-five miles per hour, but slowed down and entered the intersection at twenty to twenty-five miles an hour, and did not change the speed thereafter; that he saw the Wilson car only the one time when it appeared to be up the hill to his right "approximately—about a block." And when asked to fix the distance in feet according to his best judgment he said, "175 feet." Other testimony of plaintiff's husband was to the effect that he had driven the car twenty-seven feet in the intersection at the time of the collision, and that the car driven by defendant had entered the intersection only two or three feet; that the vision in his right eye was defective, but that of his left eye was perfect; he could distinguish light with his right eye, but not objects. He testified that he saw the lights of defendant's car, but did not see the car; and further, "I don't think any eye could have distinguished an object."

From the proof offered by defendant it appears that he was about twenty-three years of age and was driving a Pontiac car which belonged to his mother; that between nine and nine-thirty o'clock on the night in question he and four other young companions, including three girls and a young man, left King City, Missouri, and drove over State Highway 169 through Stanberry to Albany for no particular purpose, but just to have some place to go, and as one of his witnesses said, they were engaged in a joy ride. They arrived at Albany at ten-thirty P. M., and after spending some time in a cafe, started on the return journey. It was a bad, rainy night, vision poor, and driving difficult.

The defendant testified that he had been over the highway in question a great many times; that on the return journey from Albany to Stanberry, he was driving from forty to fifty miles per hour; that two of the girls were in the front seat with him; that when he reached the city limits of Stanberry his speed was reduced to about twenty-five miles per hour, and from the top of the hill on Alanthus Avenue, as he was approaching the intersection where the collision occurred, he gradually slowed down the speed of his car to about fifteen miles per hour, and this was the rate of speed at the time he entered the intersection and collided with plaintiff's car. He testified that as he was descending Alanthus Avenue he saw the Ross car

about a block away running at a rate of thirty or thirty-five miles; that he didn't see any sign of its slowing up; that the Ross car was half way down to the intersection when he was three-quarters of the way down; that he thought both cars would enter the intersection about the same time and that they did so enter; that he didn't see the Ross car all the way after he first saw it because of an intervening filling station. When asked when he did next see the Ross car, he testified that it was within thirty or forty feet of the intersection when he had a clear view; that he saw it coming, but didn't know it was going straight on; that he did not stop, and when asked whether he could have stopped in thirty or forty feet, he said: "I didn't have to." He testified that he went on into the intersection a distance of about five or six feet when he hit the Ross car right behind the front wheel; that he was on the right side of Alanthus Avenue and that plaintiff's car was twenty or twenty-five feet in the intersection; that he must have hit it fairly square, and plaintiff's car was knocked sixty or seventy feet south of the intersection.

The answer of defendant contained numerous pleas of contributory negligence, one of which is the following:

"That the driver of plaintiff's automobile and one in which she was riding suffers an impairment of sight, particularly of the right eye, so that his vision of motor vehicles approaching from the right were not visible to him, such defect of vision being well known to the plaintiff, prior to the time she permitted him to drive said automobile, and rode with him and at the time of said collision, and because of such defect in sight, the driver of said automobile drove same into the path of the oncoming automobile defendant was driving, who did not have time thereafter to avoid said collision."

To meet this issue thus raised in the case, plaintiff's counsel made inquiry of plaintiff and of her husband in reference to the competency of Mr. Ross as a motor vehicle operator. Mr. Ross testified that he was forty-five years of age and had driven an automobile even since he was sixteen years old; that the vision of his right eye was defective; that he could distinguish light, but not objects with it, and that the vision of his other eye was perfect; that during the past ten years he had driven an automobile 30,000 or 40,000 miles a year; that he never had to wear glasses, and that during all of his experience as a driver he had never had an automobile wreck.

In reference to this subject, Mrs. Ross testified that she had ridden with her husband for thirty years; that he was perfectly able to drive; that he could see perfectly; that he drove 40,000 miles a year, and that her husband had never had a wreck. This question and answer appear:

"Q. State if his condition and seeing was the same as it had always been? A. It was as usual."

The evidence that plaintiff's husband had never had a wreck was received over defendant's objection and is made a point in this appeal which will be discussed later.

The first question for determination is the propriety of the ruling on the demurrer. Appellant's counsel urge that "plaintiff's own testimony, together with that of her husband, disclosed that under the physical facts they drove their automobile into the intersection and directly into the path of defendant's car." The argument stresses the testimony of plaintiff and her husband in reference to their estimate of distances, and the location and speed of the respective cars prior to the collision. By a process of mathematical calculation based upon certain estimates of distances and rates of speed, counsel seek to demonstrate that the testimony of plaintiff and her husband could not possibly be true, and if true it shows under the physical facts described that they drove deliberately into the path of defendant's car without taking any steps to avoid a collision. A sample of the argument is this:

"The speed of the Ross car was definitely fixed by plaintiff and her husband at twenty to twenty-five miles per hour. If the Ross car was traveling twenty-five miles per hour and the Wilson car sixty miles per hour, then the Wilson car was going two and two-fifths times as fast as the Ross car, and while the Ross car traveled twenty-five feet, the Wilson car was traveling sixty feet. In any event, if the statements of plaintiff and her husband be true, and they first saw the defendant's car as their car entered the intersection, then under the physical facts, the Wilson car was within sixty feet of the intersection traveling at a speed of sixty miles per hour."

Assuming that plaintiff's car was entering the intersection when defendant's car was sixty feet from the intersection traveling at the speed of sixty miles, the conclusion is reached by counsel that plaintiff and her husband were guilty of negligence as a matter of law in attempting to proceed across the intersection.

The argument for the application of the physical fact rule is not sound. The testimony of the various witnesses in reference to the location of the respective cars at different times and their rate of speed is conflicting. No witness attempted to answer questions of speed and location with complete accuracy. This is not what is sometimes called a physical fact case where the testimony of a witness is rendered incredible. The physical facts upon which appellant's argument is based are variable under the evidence which does not show beyond controversy the location of objects or things at any definite time or place.

The argument further involves the proposition that plaintiff and her husband are conclusively bound by their estimates of speed and distances, and are precluded the benefit of any other evidence in the case bearing on the question of their alleged contributory negli-

gence. Such is not the law under the circumstances in this case. Plaintiff and her husband were not bound to make and could not reasonably be expected to make exact estimates. Plaintiff was entitled to have the jury determine the issue of contributory negligence under all the evidence in the case. Under the testimony of plaintiff and her husband and that of other witnesses, it was competent for the jury to find that plaintiff and her husband had reason to believe that they could proceed safely across the intersection. It was a question for the jury to determine from all the evidence whether or not they exercised due care in the course pursued or negligently contributed to their injury. Considering all of the facts and circumstances disclosed in evidence, plaintiff and her husband were not guilty of contributory negligence as a matter of law, and there was no error in overruling the demurrer for the reason assigned. The question of plaintiff's contributory negligence and of defendant's primary negligence was for the jury's determination. [Christner v. C. R. I. & Pac. Ry., 228 Mo. App. 220, 225; Young v. Missouri-Kansas-Texas Ry. Co. (Mo.), 100 S. W. (2d) 929, 934; Everhardt v. Garner (Mo. App.), 100 S. W. (2d) 71, 72.]

Cases cited by appellant have not been overlooked. They have all been examined and it is found that the rulings made under the facts and circumstances in those cases do not apply to the facts and circumstances of the instant case, and none of them are controlling upon the question raised on the demurrer. The main cases relied upon by appellant are: Roberts v. Consolidated Paving & Material Co., 70 S. W. (2d) 543; Wininger v. Bennett, 104 S. W. (2d) 413; Parkwell Milling Co. v. Massman, 83 S. W. (2d) 128; Garner v. St. Louis-San Francisco Ry. Co., 89 S. W. (2d) 947. All of these cases are distinguishable upon the facts from the case in hand.

Appellant urges error in the giving of plaintiff's Instruction No. 2 "for the reason that it charged the jury that in the event plaintiff's automobile entered the intersection first, then plaintiff's automobile had the right of way, even though at the time defendant's automobile was approaching the intersection from the right of plaintiff's automobile." It is urged that under the statute, Section 7777, Revised Statutes of Missouri, 1929 (now Section 8385, R. S. Mo. 1939), and under the law as declared in Pappas Pie & Baking Co. v. Stroh Bros. Delivery Co., 67 S. W. (2d) 793, and McCombs v. Ellsberry, 85 S. W. (2d) 135, "that the mere fact that the driver of a motor vehicle reaches and enters an intersection prior to the entry of another automobile therein, does not itself give such operator the right to proceed across the intersection in any event." It is the law as declared in the above cases that a driver of a motor vehicle who first reaches an intersection does not have an *absolute* and *unqualified* right to proceed across the intersection under any and all circumstances and regardless of the conditions which may confront

him.   However, the instruction in question does not tell the jury that plaintiff and her driver had an unqualified right to proceed merely because plaintiff's car reached the intersection first.   As a predicate for finding that plaintiff's car had the right to proceed across the intersection the instruction required the jury to find "that in entering and proceeding across said intersection Marion Ross and Irene Ross exercised such care as very prudent and careful persons would have exercised under the same or similar circumstances."   The jury being required to find that plaintiff and her driver in entering and proceeding across the intersection were in the exercise of the highest degree of care under all the circumstances, there is no merit in the criticism that the instruction erroneously declared the law to be that plaintiff upon reaching the intersection first had the *unqualified* right to proceed across the intersection.   The above was the only reason given for error in the instruction as set forth in the assignment and in the second point of the brief.   Other reasons are urged in the argument which may be noticed as a matter of grace to appellant.

It is asserted that the instruction ignored the defense of contributory negligence.   The instruction required the jury to find that plaintiff and her husband were exercising the highest degree of care under all the circumstances.   This met the issue of any contributory negligence and required a finding by the jury that plaintiff was not in fact negligent.   [Wheeler v. Breeding, 109 S. W. (2d) 1237, 1243.]

It is further asserted that Instruction No. 2 is in conflict with defendant's Instruction No. 3.   There was no instruction on behalf of defendant numbered 3, but there was one lettered C, which instucted the jury that if the vehicles reached the intersection at approximately the same time, then defendant's automobile had the right of way.   No conflict appears.   The complaint that Instruction No. 2 failed to include defendant's theories in reference to plaintiff's alleged contributory negligence is without merit because defendant's Instruction C did submit such theories.   [Stalcup v. Bolt, 234 Mo. App. 1070, 1076.]   No reversible error is found to exist in plaintiff's Instruction No. 2.

The specification of error in giving of plaintiff's Instruction No. 5 is directed at that portion of the instruction which reads as follows:

"The court instructs the jury that if you find your verdict in favor of the plaintiff, you should assess her damages at such sum as you may believe from the evidence will fairly and reasonably compensate her for the injuries she received, if any, as show by the evidence, if any, the pain and suffering that she suffered, if any, in consequence of her injuries, if any, as shown by the evidence, if any, and for such other damages, if any, which she suffered, if so, as shown by the evidence, if any."

It is argued that the latter part of the instruction permitted an award of damages for items not included in the petition.   The brief

was no doubt prepared in view of the original petition shown in the abstract. The case was not tried upon that petition, but was tried upon an amended petition which is shown by a supplemental abstract of the record. In addition to the personal injuries alleged, plaintiff stated that she had paid out, and had become obligated to pay, large sums of money for doctors, nurses, medicines and hospitalization. This plea of special damages was not contained in the original petition. Plaintiff also alleged damage to her motor car in the sum of $284.50 in both the original and amended petitions. The evidence shows special damages for doctor and hospital bills and medical treatment in excess of $1000. Plaintiff's injuries and her disability resulting therefrom were serious. The amount of the verdict is not claimed to be excessive, and from the evidence in the case it appears to be very moderate. There is nothing whatever to indicate that the jury exercised the alleged privilege of a roving commission to find damages. The jury was confined to an award of damages as shown by the evidence. Complaint is made that this instruction did not furnish a guide to the jury by which to determine the damage to plaintiff's automobile, and that the jury may have awarded more damage for such loss than was claimed in the petition.

In support of the above contention, the appellant cites Wheeler v. Breeding, 109 S. W. (2d) 1237, 1244 (Springfield Court of Appeals). In the Wheeler case suit was for damages for personal injury and damages to a truck. The instruction in the Wheeler case, ruled to be in error, is as follows:

"The jury is further instructed that if you find the issues for the plaintiff, you will assess his damage at such sum as you may find and believe will reasonably compensate him for the damage sustained to his truck, if any; and for all physical pain and mental suffering, if any, and for his necessary expense for medical and surgical attention, medicine and clinical fees, if any, and for such further payment for suffering which you may find and believe from the evidence he will suffer in the future, if any, as a result of the injuries sustained in the collision in question."

It will be noted that the above instruction covered both as to general injuries and as to special damages for injury to truck. The error in the instruction, as declared in the opinion, is that the instruction fails to give a proper guide to the determination of the special loss or damages to the truck.

There is a marked difference between Instruction No. 5, complained of herein, and the instruction in the Wheeler case, which clearly distinguishes the instruction involved herein from the one involved therein. The instruction in the Wheeler case is not a general instruction on measure of damages. The instruction is specific as to damage to truck.

Instruction No. 5, complained of herein, is a general instruction on the measure of damages for personal injury and is correct as to the general law presented. Further, Instruction No. 5 does not attempt to point out any element of damages to the automobile. In the opinion in the Wheeler v. Breeding case, *supra*, it is said:

"This is very largely within the discretion of the jury, and, if an instruction on the measure of damages for injuries to a plaintiff is correct in the general statement of law presented, and the defendant does not direct the jury more particularly as to the elements they should consider, then the defendant cannot be heard to complain that the plaintiff's instruction is too general."

It will be further noted in the opinion in the Wheeler case that the appellant therein had complained that the verdict therein was excessive. No such contention is made in the case at bar.

. We have examined the record in this case carefully and the question of seriousness of the injuries of respondent is not controverted, nor is the cost of medical and hospital expenses questioned.

Section 1228, Revised Statutes of Missouri, 1939, reads as follows:

"The Supreme Court, or courts of appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action."

The above statutory admonition has been followed in this State in numerous cases. [Ralston Purina Co. v. Swaithes, 142 S. W. (2d) 340; Doll v. Purple Shoppe, 90 S. W. (2d) 181; King v. St. Louis, 250 Mo. 501; Shinn v. Railroad, 248 Mo. 173; Wolf v. Kansas City, 334 Mo. 796.]

For reasons stated above, we conclude that plaintiff's Instruction No. 5, if erroneous, does not present ground for reversal, in that the verdict, viewed in the light of the evidence, is not excessive and not even claimed by appellant to be excessive.

Appellant next assigns error in the admission of testimony and states that the court erred in permitting plaintiff and her husband, over the objection and exception of the defendant, to testify that prior to the night of the accident in question Mr. Ross had never had an automobile wreck. This evidence has been referred to above. Before the plaintiff and her husband answered the question as to whether Mr. Ross had ever had an automobile wreck, both had been examined extensively without objection in reference to the experience of plaintiff's husband in driving automobiles, and his ability and capacity to drive safely notwithstanding his defect of vision. After a showing of many years of experience and hundreds of thousands of miles of operation without difficulty, plaintiff's husband was asked this question: "Q. Prior to this night, July 16, 1938, had you ever had an automobile wreck?" And over the objection of defendant's counsel, he answered: "I have not." The objection made was the

1190

following: "Object to that. The issues are limited as to what happened as to the night in question and the collision between the Ross car and Wilson car and evidence of negligence cannot be proven by the past record of a driver of a car or having not been involved in an accident or by general reputation by being a safe driver." Plaintiff's counsel stated in part: "It is plead he had defective eyesight and we say the best as to how good he can drive is on the experience he has had in doing that very thing. That issue is in the case." The court said: "I will admit it for that purpose." When the plaintiff was asked whether or not her husband had ever had a wreck prior to the night of the collision, she answered "no;" after which an objection was made to the question and the answer for the reason that it had no tendency to prove any issue in the case or the actions of the driver of the automobile in this case, and that the purpose was to get before the jury immaterial issues to the prejudice of defendant. The objection was overruled.

Does this evidence under the pleadings and under all the circumstances in this case constitute reversible error? We do not think that it should be so ruled because the answer squarely put in the issue the question of plaintiff's knowledge that her husband was an incompetent driver on account of defective vision. The evidence was directed to this issue and to the question of the driver's competency. The testimony of plaintiff's husband that he never had a wreck added little if anything to his previous testimony, which was received without objection. It had already been shown that he had driven an automobile for thirty years, and for the last ten years forty thousand miles a year, all without difficulty. If he ever had a wreck he could not have stated that his experience in driving had been without difficulty. The error that is said to inhere in the admission of this proof is not of such character as to materially affect the merits of the case to the disadvantage of defendant. The interest of justice does not require a retrial on account of the admission of this testimony. [Section 1228, R. S. Mo. 1939.]

Appellant relies upon the case of Friedman v. United Railway Company of St. Louis, 293 Mo. 235, 245, 238 S. W. 1074, wherein it is ruled that the trial court properly excluded proffered testimony to the effect that the driver of the automobile in that case had never had a previous accident on the ground that such testimony would open the door to perplexing side issues. It does not appear that the competency of the driver in that case was put in issue by the answer, and the ruling made appears to be placed upon the ground that the subject of inquiry was a collateral issue rather than an issue raised by one of the parties in the case. This feature of the case clearly distinguishes it from the case in hand, and we do not regard the ruling in the Friedman case to be controlling upon the question presented in this case. Our attention is not called to any Missouri ad-

judication upon similar pleadings and facts. Evidence that plaintiff's husband had never had a wreck was not relevant or material to the question of his negligence or lack of negligence at the time of the collision, and it was not admitted on that basis. When the answer alleged his incompetency as a driver, and that such incompetency was known to the plaintiff, it does appear relevant, at least, to the subject of plaintiff's knowledge of her husband's competency or incompetency to drive an automobile. When a pleading is based in part on the unfit and reckless character of an automobile driver employed by another, it appears to be proper for the owner to testify in denial of any knowledge of any previous reckless driving. The Supreme Court of Tennessee so holds. [Frank v. Wright, 140 Tenn. 535, 542, 205 S. W. 434, 435.]

Finally, complaint is made about the introduction of evidence relative to speed signs posted by the City of Stanberry limiting speed to twenty-five miles per hour. There was testimony that such signs were posted along the highway by the City of Stanberry, and when this evidence was first received there was no proper objection thereto, and counsel for defendant as well as counsel for plaintiff elicited that information from the plaintiff. The subsequent objection of defendant to the same kind of testimony could be of no avail. [Buffum v. F. W. Woolworth Co., 221 Mo. App. 345, 352.]

All of the alleged trial errors have been considered. It clearly appears that the verdict and judgment were for the right party. In view of the evidence the damage awarded is very modest in amount. There was no error materially affecting the merits of the case. The judgment should be affirmed. It is so ordered. All concur.