CLAUDE H. KNIGHT, by his Father and Natural Guardian, W. J. KNIGHT, Respondent, v. MRS. BRUCE W. RICHEY, Appellant, No. 42790—250 S. W. (2d) 972.

Division One, July 14, 1952.

Motions for Rehearing or to Transfer to Banc Overruled, September 8, 1952.

294

*Fred F. Wesner, E. E. Thompson* and *Sam Mandell* for appellant; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

*Frank O. Knight* for respondent.

VAN OSDOL, C.—In this action for personal injuries sustained by plaintiff in an intersectional collision between the motor bicycle on which plaintiff was riding and the automobile driven by defendant at or near the western corporate limits of Sedalia the jury awarded plaintiff $15,000, and defendant has appealed from the judgment entered upon the verdict.

Plaintiff's case was submitted to the jury upon primary negligence of defendant in driving at a high and excessive rate of speed, and in failing to yield the right of way to plaintiff; and upon negligence under the humanitarian rule in failing to slacken speed or swerve to the right.

Defendant-appellant contends (1) plaintiff's evidence shows that he was guilty of contributory negligence as a matter of law in failing to look out, barring his recovery upon primary negligence; and (2) the evidence was insufficient to justify the submission of defendant's negligence under the humanitarian rule, in that there was no substantial evidence tending to show the speed of defendant's automobile could have been slackened or the automobile swerved and the injury averted after plaintiff was in imminent peril. Defendant-appellant further contends (3) Instructions Nos. 1, 2 and 3, given by the trial court at plaintiff's request, were erroneous. In examining these contentions it is necessary to consider the evidence tending to show the physical surroundings and the facts and circumstances of the collision.

The north side of West Main Street, an east-west street, paved with asphalt "black top" twenty feet wide, is intersected by North State Fair Boulevard, a north-south street, paved with asphalt eighteen feet wide, on the western outskirts of Sedalia. The building of the Kehl Packing Company is located some fifty feet northwest of the intersection. There are no "stop" signs at the intersection. North State Fair Boulevard does not pass directly through Main Street. The boulevard "jogs" to the eastward and then continues southwardly. South of Main Street the boulevard is known as State Fair Boulevard. It is thirty feet from a southward projection of the east line of North State Fair Boulevard to the west line of State Fair Boulevard. It is ninety feet from the projected center line of North State Fair Boulevard to the center line of State Fair Boulevard "proper." In approaching from the north, North State Fair Boulevard ascends at a grade of about four per cent until it attains the [974] approximate level of West Main Street at the "property line." The hard surface of North State Fair Boulevard widens or "fans out" as the boulevard approaches the pavement of West Main. At the approach there are ten or twelve feet of solid level ground available for traffic north of the north edge of the Main Street pavement. The evidence tends to show that in July 1948 there were elm seedlings, buck brush and horse weeds six to ten feet high along and between the ditch and the property line east of the boulevard and north of West Main. Exhibits, photographs introduced by plaintiff, disclose that the brush, weeds and seedlings extended southwardly and to within fifteen or twenty feet of the pathway of westbound vehicles on West Main.

Soon after 10:30 o'clock in the morning of July 29, 1948, plaintiff, Claude H. Knight, seventeen years old, was riding his Schwinn-

Built Wizard Motor Bicycle, approximately six feet long, southwardly on North State Fair Boulevard. It was a "sunshiny day," and the pavement was dry. When plaintiff was in the vicinity of the right of way of the Missouri Pacific Railroad, three or four blocks north of the intersection of the boulevard with West Main, his motor bicycle (or "motor bike") was in good condition mechanically and he was moving at a speed of about ten miles per hour. His motor bicycle and defendant's westbound '47 Nash collided as plaintiff was moving from North State Fair Boulevard out onto West Main.

Plaintiff was seriously injured, and his "motor bike" was demolished. The front of defendant's automobile was badly damaged.

Plaintiff testified that, moving at a speed of ten or twelve miles per hour, he could have stopped his motor bike within about fifteen feet. He has no recollection of what transpired after he moved from the vicinity of the Missouri Pacific right of way. He was rendered unconscious by the collision. Physicians testified it is not unusual for head injuries such as were sustained by plaintiff to cause traumatic amnesia, or traumatic loss of memory of "what happened immediately preceding the accident."

A witness for plaintiff testified of observing the collision. The witness was standing inside the building of the Packing Company northwest of the intersection and looking southeastwardly through a window. He testified the vehicles of plaintiff and defendant collided in the center or a little past the center of Main Street on the south side of that street. Plaintiff was moving ten or twelve miles per hour and defendant "was going at least 40." The defendant's automobile swerved southwardly and came to a stop on the south side of Main sixty feet west of the intersection (another witness said defendant's car was stopped "about thirty feet west of the west line of the boulevard running north"). The two right wheels of defendant's car were on, and the two left wheels were off, the (south) edge of the "black top." The upper part of plaintiff's body was lying under the left (south) side of defendant's car. The motor bike was lying in front of the car.

When the witness first saw defendant's Nash and plaintiff's motor bicycle they were "right close" to the intersection. Plaintiff was "just about the center, a little bit past the center of Main Street going south." The automobile was "pretty close." Plaintiff and defendant came into the intersection "pretty close" to the same time. The witness said he thought each of the parties, plaintiff and defendant, could have seen the other approaching from points one hundred feet from the intersection.

Another witness for plaintiff came to the scene "shortly after" the collision. The witness testified there were scratches all along the highway as if "something had been drug across there." The

scratches were in the center, if anything on the south side of the center line of Main Street, and made "a complete diagonal" until they stopped on the south side of the street.

Plaintiff's witness, a police sergeant, testified that defendant, upon being questioned a few minutes after the collision, stated she had approached the intersection at a speed of thirty-five or forty miles per hour. She explained that she applied the brakes but "didn't apply them as strongly as she could have applied them" because her two small **[975]** daughters were standing up in the front seat of the car.

Defendant testified that she was moving westwardly along the right side of West Main and approached the intersection at a speed of about thirty-five miles per hour. She was familiar with the intersection. Her two small daughters were in the rear seat of her car. Upon her near approach to North State Fair Boulevard she saw plaintiff dart southwardly from behind some brush and shrubs. Plaintiff was four or five feet east of the center line of the boulevard. He was looking "straight south." When she first saw plaintiff, defendant was approximately fifteen feet east of him; but he was "at an angle to me, probably a little farther than 15 or 20 feet." She "blew the horn and put on the brakes"; and swerved slightly to her left, "but not appreciably." She applied her brakes intermittently after the collision to avoid dragging the tires across plaintiff's body. She denied she had told the police sergeant she had not used the full force of her brakes prior to the collision. From the time she saw plaintiff until he was up within three feet of her vehicle, plaintiff gave no indication that he was going to do anything except continue on across Main Street in front of defendant's car. The front of plaintiff's bicycle was about even with the north edge of the Main Street pavement when defendant started to swerve southwardly (to her left). The front of defendant's automobile was approximately six feet east of the east line of the pavement of the boulevard when she started to swerve. When the vehicles collided, the front end of the bicycle "might have been slightly across the middle of Main Street, but mostly north of the center line." The left wheel of defendant's car might have been "on the center line."

A witness for defendant testified that defendant was moving about twenty-five miles per hour. The witness saw the motor bike "run out"; saw the display of the red tail light on defendant's car; and heard defendant sound a warning. When the vehicles collided, the bike was about four and a half feet east of the center of the north road; and the front end of the bike was about three and a half feet north of the center line of Main Street.

(1) We believe defendant-appellant's contention that plaintiff was guilty of contributory negligence as a matter of law is with-

out merit. There was no evidence of plaintiff's conduct during his progress after he left the vicinity of the Missouri Pacific right of way until just before he passed into the intersection. Defendant testified that, when plaintiff moved out on West Main at the intersection, plaintiff was looking "straight south"; but plaintiff did not so testify. Plaintiff was unable, because of loss of memory, to testify concerning his conduct immediately preceding the collision. Moreover, even though plaintiff was looking "straight south" as he moved into the intersection, this does not compel the conclusion that plaintiff had theretofore failed to observe defendant's approach and to make an estimate of her speed and position. Defendant had the burden of proving contributory negligence of plaintiff. Contributory negligence as a matter of law can seldom be established by oral testimony offered solely by defendant. Usually it must appear in plaintiff's case, or be established by testimony on the part of defendant which plaintiff concedes to be true, or by documentary evidence or proof of facts or circumstances by defendant which leave room for no other reasonable inference. State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W. (2d) 967. In the exercise of his duty to exercise care in looking out for his own safety, plaintiff was obliged to observe the entire situation at the intersection as disclosed by his view ahead and laterally, but he obviously could not maintain an uninterrupted lookout in both directions. There was evidence tending to show that plaintiff and defendant reached the intersection at approximately the same time, and there was evidence tending to show that plaintiff reached and moved into the intersection when defendant was yet some distance to the eastward. Although in the exercise of care plaintiff must have seen and become aware of defendant's approach even though the view to plaintiff's left was somewhat obstructed, we believe **[976]** it should not be said as a matter of law that, in the circumstances of the collision including the circumstance of plaintiff's favored position as a traveler approaching from defendant's right, plaintiff was not justified in assuming that defendant would manage or regulate the speed and progress of her automobile so that plaintiff could pass safely over the intersection. See Hoppe, Inc. v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W. 2d 347, in which this court agreed with that portion of the opinion of the St. Louis Court of Appeals (227 S.W. 2d at page 503), holding a plaintiff's driver was not negligent as a matter of law. The instant case differs from the cases of Claridge v. Anzolone, 359 Mo. 65, 220 S.W. 2d 33; and Yeaman v. Storms, 358 Mo. 774, 217 S.W. 2d 495, cited by defendant-appellant. In the Claridge and Yeaman cases, according to plaintiffs' own testimony, they, having seen defendants' near approach, attempted to race across the respective intersections depending upon defendants to slow down. And in the Yeaman case there was a "stop sign" on Westover Road southwest of the west line of

Brookside. In Roberts v. Consolidated Paving & Material Co., 335 Mo. 6, 70 S.W. 2d 543, cited by defendant-appellant, the plaintiff's decedent in approaching from the east on Monterey was confronted with a stop sign. Plaintiff's decedent either negligently failed to stop at the stop sign, or, having stopped, was negligent in moving out into Sixth Street in front of defendant's truck to be plainly seen moving twenty to thirty miles an hour near the intersection.

(2) One of the constitutive factual elements of a claim or cause of action under the humanitarian rule is that a defendant (after he knew or, if he had the duty to be on the lookout, after he, in the exercise of the prescribed degree of care, should have known plaintiff was in imminent peril) had the present ability with the means at hand to have averted the impending injury. Plaintiff's obliviousness of danger may broaden the zone of imminent peril, and evidence tending to show obliviousness may establish plaintiff's imminent peril and bring home to defendant knowledge or notice thereof. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482. Now it is plaintiff's imminent peril as it is or should be reasonably apparent to defendant which fixes the zone of imminent peril so far as concerns defendant's duty to act to avert the impending injury under the humanitarian rule. Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W. 2d 254. In the instant case there was no evidence tending to show that plaintiff was in imminent peril until he moved southwardly from behind the brush or shrubs extending along the east side of North State Fair Boulevard to within fifteen or twenty feet of the pathway of defendant's automobile westbound on Main. Plaintiff was then looking "straight south," according to the testimony of defendant; at that time plaintiff gave no "indication that he was going to do anything except go on across in front of" defendant's car. Plaintiff's witness (the only witness who stated the speed of plaintiff's approach) said plaintiff was then moving ten or twelve miles per hour. In view of the variance or difference in this estimate of speed, plaintiff, who had the burden of proof, was obliged to rely upon the speed of twelve miles per hour in substantiating the submission of negligence under the humanitarian rule. Krause v. Pitcairn, 350 Mo. 339, 167 S.W. 2d 74. It is true that, according to a witness for plaintiff, defendant could have seen plaintiff throughout the last one hundred feet of her approach to the boulevard, and it is possible that plaintiff never became aware of defendant's approach as plaintiff moved toward the intersection; and defendant, who had the duty to have been on the lookout, was, under the humanitarian rule, to be charged with notice of what she, in the exercise of the highest degree of care, could have seen. But there was no evidence of what defendant saw or could have seen prior to the time defendant said plaintiff came from behind the brush and shrubs. Neither plaintiff nor any witness for plaintiff, and neither defendant nor any witness for defendant, testified of plain-

tiff's demeanor or the movement and progress of his motor bike prior to the time defendant said plaintiff moved out from behind [977] the shrubs. Consequently, there was no evidence introduced from which it could be reasonably found that plaintiff was oblivious and manifested the reasonable appearances of obliviousness of defendant's approach prior to the time plaintiff moved out on West Main from behind the shrubs. If plaintiff moved southwardly from behind the shrubs at the rate of twelve miles per hour, he could have been no more than fifteen or twenty feet, or .85 or 1.14 seconds, from the pathway of defendant's vehicle, although perhaps slightly more than twenty-five or thirty feet, or 1.42 or 1.70 seconds, from the point of collision, which, according to plaintiff's witness occurred at a point in the center or "if anything on the south side of the center line" of Main Street. Defendant in approaching was traveling at a speed of forty miles per hour according to the testimony of a witness for plaintiff; thirty-five or forty miles per hour according to the testimony and admissions of defendant; or twenty-five miles per hour according to the testimony of a witness for defendant. In our opinion the question of the ability of defendant to have acted in averting the collision, after plaintiff was in imminent peril, by slackening speed or swerving to the right (or to the left) was one of pure conjecture and should not have been submitted to the jury.

■ (3) The trial court at plaintiff's instance gave Instruction No. 1, submitting defendant's negligence in operating her motor vehicle at excessive speed, as follows,

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence defendant negligently operated the automobile driven by her in a westerly direction upon Main Street at a rate of speed which was dangerous and excessive under the circumstances then and there existing, and if you further find that said automobile struck the plaintiff or his motor bike and injured the plaintiff, and if you further find that said collision and injury to the plaintiff, if any, were directly and proximately caused by the negligence of the defendant, if you find she was so negligent, in so operating said automobile at a dangerous and excessive rate of speed, if so, and if you further find that the plaintiff was exercising the highest degree of care for his own safety, then your verdict must be for the plaintiff."

Defendant-appellant contends the instruction, a verdict-directing instruction, is clearly erroneous for lack of "proper factual hypothesization," citing Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541; Dahlen v. Wright, 361 Mo. 524, 235 S.W. 2d 366; and Fantin v. L. W. Hays, Inc., Mo. Sup., 242 S.W. 2d 509. In the instant case there were little real differences in the factual theories of plaintiff and defendant relating to the physical surroundings and the cir-

cumstances of the approach of the respective vehicles of plaintiff and defendant to the intersection and place of collision as such physical surroundings and circumstances were determinative of the issue of defendant's negligent speed. There having been no real conflict of the factual theories relating to the physical setting and the circumstances of the collision relevant to the issue of speed, there was no real necessity of more particularized hypotheses of the facts than the hypotheses of Instruction No. 1. In the instant case a submission of the ultimate facts (negligence, specifically as submitted—causation—injury) essential to a finding for plaintiff in the existing circumstances would seem to have been sufficient. Yates v. Manchester, supra, has been generally interpreted as requiring a particularized submission of evidentiary facts regardless of whether or not the evidence introduced by the respective adversary parties was complicated or widely divergent in tending to prove different factual situations and the facts of only one of which situations were sufficient to support a finding upon the issue or issues of negligence submitted. Such interpretation of the Yates case was justified, even upon the most careful study of the Yates opinion as written, because the evidence introduced by the adversary parties which tended to show the complicated sets of facts and circumstances of the divergent or opposing factual theories of the parties was not adequately [978] stated in the opinion. It is also true that some of the language of the Yates opinion was arguendo in demonstrating that the considered instructions were erroneous in view of the complicated and opposing factual showings, which diverse showings the opinion as written did not fully disclose.

In the Yates case the defendant Mitchell's taxicab, in which plaintiff was riding, moving southwardly, was struck by defendant Manchester's eastbound automobile at the intersection of Whittier, a north-south street, and Cook Avenue, an east-west street. According to one version of the facts, there were cars parked at the west curb of Whittier, north of Cook Avenue, and there was also a line of southbound cars which had stopped on Whittier for eastbound traffic on the south side of Cook to pass. The Manchester car was moving eastwardly in a line of traffic and was following within ten feet of the car ahead of it. The taxicab, going fast, cut around the halted southbound line of cars, through the eastbound line of traffic, in front of the Manchester car where it was first seen, and it was struck at the rear right side at a time when the Manchester car, having slowed down to two miles per hour for the intersection, was just gaining speed to ten miles per hour. According to the other version of the facts, there were no cars parked at the west curb of Whittier, north of Cook Avenue, and there was no line of cars headed south on Whittier around which the taxicab passed into the intersection. The southbound taxicab was proceeding slowly as it approached the intersection, slowed down for it, picked up speed somewhat after it entered the intersection and was

in the intersection while the Manchester car moving eastwardly was still a considerable distance west of Whittier. The taxicab continued forward until its rear end was south of the middle of Cook Avenue when it was struck with considerable violence on its right rear side by the eastbound car, which had been traveling at a high rate of speed.

The Yates case and cases following the Yates case are not to be read or construed as requiring the submission of facts which are not necessary or essential to a finding upon the issue or issues of negligence specifically submitted. Le Grand v. U-Drive-It Co., Mo. Sup., 247 S.W. 2d 706. But facts "essential" or "necessary" to support a reasonable inference and finding of negligence could not be said to be the same in all cases. Le Grand v. U-Drive-It Co., supra. Negligence, of course, depends upon surrounding circumstances as well as the particular conduct involved, because an act or omission which would clearly be negligent in some circumstances might not be negligent in other circumstances and surroundings. Therefore it would seem there could be no stereotyped instruction which would correctly submit any issue of specific negligence in the circumstances of all cases. And where the facts are complicated and there is substantial evidence supporting divergent factual situations or theories and under the facts and in the circumstances of only one of which could a party have been negligent as submitted, then, in fairly defining and submitting the issue to the jury, in a verdict-directing instruction, the facts (even though evidentiary in the sense that they form a factual situation in which the ultimate facts of negligent conduct and causation as submitted could be reasonably inferred) essential to support the finding should be hypothesized as simply and plainly as possible in the submission of the issue, so that a jury may evaluate and weigh the evidence tending to prove and to refute the facts essential to a finding upon the issue, and so that the jury may not make a finding upon the issue based on facts which in legal effect would not support the finding. Yates v. Manchester, supra.

■ Plaintiff's Instruction No. 2 submitted defendant's negligence in failing to yield the right of way to plaintiff, as follows,

"The Court instructs the jury that if you find and believe from the evidence in the case that at the time and place mentioned in the evidence that before the automobile driven by the defendant had reached the east line of the intersection of Main Street and the public highway along which plaintiff was riding, if so, that the motor bike which plaintiff was riding had entered said intersection from the North and was proceeding [979] across or through said intersection, if you so find, or if you find and believe from the evidence that said automobile and said motor bike were traveling in the directions hereinabove stated and that they both arrived at and entered said intersection at the same time or approximately the same time, if you so find, and if you further find that in entering

and proceeding across said intersection the plaintiff exercised such care as a very careful and prudent person would have exercised under the same or similar circumstances, if so, then the jury is instructed that the plaintiff had the right of way across and the right to proceed across said intersection, and if you so find and further find that the defendant, Mrs. Bruce Richey negligently failed to yield the right of way across said intersection to the plaintiff and his motor bike, if so, and that as a direct result of such failure, if she did so negligently fail, the collision mentioned in evidence occurred, if so, and plaintiff was thereby injured and damaged, if so, then your verdict must be for the plaintiff and against the defendant.''

Defendant-appellant contends the trial court erred in giving the instruction submitting that the plaintiff's motor bike had entered the intersection before or at approximately the same time the defendant's automobile reached the intersection, because defendant-appellant asserts, the evidence shows defendant reached the intersection first. Defendant-appellant, in urging this contention, argues that the intersection to be considered is the distance (150 feet) between the east line of State Fair Boulevard approaching West Main from the south and the west line of North State Fair Boulevard approaching West Main from the south. But we believe the intersection to be considered in the instant case in determining the issue of defendant's failure to give the right of way [Section 304.020 (12) RSMo 1949, V.A.M.S.] is the intersection of North State Fair and the north line of West Main. Section 301.010 (6) RSMo 1949, V.A.M.S., re-enacted as 301.010 (8) L. 1951, p.——, defines ''intersection'' as any highway which joins another ''whether or not it crosses the same.''

We think the instruction did not assume or advise the jury that plaintiff had the unconditional or unqualified right to proceed across the intersection regardless of the factual situation. Compare Ross v. Wilson, 236 Mo. App. 1178, 163 S.W. 2d 342. A reading of the instruction discloses the submissions that plaintiff had entered the intersection before the automobile driven by defendant had reached the same, *or* that both had entered the intersection at the same or approximately the same time. Thus the negligent failure to yield the right of way was submitted both under statute and under common law. The first alternative was not, although the second alternative was, within the purview of Section 304.020 (12), supra; Bramblett v. Harlow, Mo. App., 75 S.W. 2d 626; Pappas Pie & Baking Co. v. Stroh Bros. Delivery Co., Mo. App., 67 S.W. 2d 793. In the situation hypothesized in the first alternative submission of the respective parties' approach, their conduct was to be determined by the common-law duty to exercise care in the circumstances. Pappas Pie & Baking Co. v. Stroh Bros. Delivery Co., supra. However, if plaintiff reached the intersection first, as stated in the first alternative, the circumstance

was one which could be considered by the jury in determining the negligence of defendant in failing to yield the right of way to plaintiff. Lowry v. Mohn, Mo. Sup., 195 S.W. 2d 652. But assuming plaintiff in his approach to the intersection was in a favored position for prior passage across the intersection because of his approach from defendant's right, he did not have the absolute right to proceed regardless of the situation. State v. Adams, 359 Mo. 845, 224 S.W. 2d 54; Weis v. Melvin, Mo. Sup., 219 S.W. 2d 310; Lowry v. Mohn, supra; Rosenkoetter v. Fleer, Mo. Sup., 155 S.W. 2d 157; Bramblett v. Harlow, supra; Ross v. Wilson, supra. And the instant instruction might be said to be erroneous in advising the jury that, under either or both alternatives the plaintiff "had the right of way across and the right to proceed across said intersection," had not the instruction qualified such advice by requiring, as a predicate thereto, the finding that plaintiff in entering and proceeding across the intersection was [980] exercising the prescribed degree of care in the circumstances. Ross v. Wilson, supra. It is to be further observed that the instruction submitted to the jury that defendant had "negligently failed to yield the right of way" to plaintiff.

Since humanitarian negligence was not submissible, it would not be helpful to consider the contentions of error in plaintiff's Instruction No. 3 given by the trial court in submitting that issue.

The judgment should be reversed, and the cause remanded.

It is so ordered. *Lozier, C.,* concurs; *Coil, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by *Van Osdol, C.,* is adopted as the opinion of the court. All the judges concur.