Betty L. ASHER (Plaintiff), Respondent,

v.

William A. GRIFFIN (Defendant), Appellant.

No. 30537.

St. Louis Court of Appeals.
Missouri.
Jan. 17, 1961.

L. J. Anderson, St. Louis, for appellant.

Mills & Palumbo, and Myron D. Mills, St.
Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action by Betty L. Asher, as plaintiff, against William A. Griffin, as defendant, to recover damages for personal injuries alleged to have been sustained on March 7, 1958, as a result of a collision between an automobile driven by plaintiff and an automobile operated by defendant. The trial resulted in a verdict and judgment for plaintiff in the sum of $5,000. Defendant has appealed.

The petition alleged that on March 7, 1958, plaintiff was operating an automobile on a parking lot on the north side of Manchester Road; that before entering Manchester Road she brought her said automobile to a stop, and while in said stopped position her car was struck by an automobile operated by defendant westerly along Manchester Road, thereby causing plaintiff to sustain serious and permanent injuries. It was alleged that said collision and injuries were the result of the negligence of the defendant in operating his automobile at a high and dangerous rate of speed; in failing to keep and maintain a constant, careful and vigilant watch and lookout ahead; and in failing to turn his vehicle to the left so as to pass plaintiff's car without interference. The petition then enumerated the alleged injuries received and prayed for damages in the sum of $7,500.

By his answer defendant specifically denied the above mentioned allegations of the petition, and averred that any injuries plaintiff sustained as a result of the occurrence mentioned in her petition, were the direct and proximate result of plaintiff's negligence contributing thereto.

Defendant here contends (1) that no submissible case was made against him; (2) error in the giving of plaintiff's verdict-directing instruction; and (3) that the verdict is excessive. In view of the issues thus presented we will review the evidence in the light most favorable to plaintiff.

The evidence shows that plaintiff, just prior to the collision, was operating her automobile on the Brentwood Bowling Alley parking lot which was located on the north side of Manchester Road. With her in the car at the time was her husband. Manchester Road is a four lane highway which runs in an east-west direction in St. Louis County. The defendant was driving his automobile west on Manchester Road. The accident happened between 9:30 P.M. and 10:00 P.M.

On the north edge of Manchester there was a "roll type" curb which plaintiff estimated was 12 inches wide. A sidewalk ran parallel to the north side of Manchester. In front of the parking lot and between the sidewalk and north curb there was a blacktop paved strip four or five feet wide.

At the time in question it was plaintiff's intention to drive her automobile from the parking lot and make a right turn to the west on Manchester Road. She drove toward Manchester between rows of automobiles parked on the parking lot, over the sidewalk and blacktop strip and stopped at the north curb of Manchester headed in a southwestwardly direction. At that time, according to plaintiff's testimony, the front wheels of her car were about a foot or a foot and a half north of the curb. She stated she did not believe that any part of her automobile extended over the curb, but that it was possible it did. Plaintiff's husband gave like testimony, stating that the car could have been overhanging a few inches into the street. There were no cars parked in front of the bowling alley parking lot, which lot, according to plaintiff's estimate, was about 95 feet in width along Manchester Road. East of the bowling alley parking lot there were cars parked on the blacktop strip, which would, to a certain extent, interfere with the view of one looking east on Manchester.

After plaintiff stopped her car at the curb she looked east on Manchester and observed defendant's automobile approaching. She stated that defendant's car was then approximately 130 feet east of her car. She arrived at this estimate by later stepping off

the distance between where her car had stopped and the place defendant's car was, when she first observed it. She also stated that defendant's car was about 4 or 5 lengths away at the time she first saw it. Defendant was driving not more than one foot from the north curb at the time and was traveling forty to fifty miles an hour. Plaintiff and her husband continued to watch defendant's car until the time of impact. When defendant's car was 25 or 30 feet from plaintiff's automobile, the front end of defendant's car dipped down as if brakes had been applied and then swerved to the right toward plaintiff's car.

The collision occurred almost instantly or "in a matter of seconds" after plaintiff first saw defendant's automobile. However, plaintiff stated she had time to observe defendant's speed, the dip of the front end of his car, and the sudden veering of the car toward her. At the time of the collision defendant's car was headed in a westerly direction. Plaintiff testified that part of defendant's car could have been off Manchester at the time, but that she did not know. She also stated that all of defendant's car could have been on Manchester at the time of collision. The right front of defendant's car struck the left front of plaintiff's automobile near the left head light. The damage to plaintiff's car was the left front fender. The damage extended back about two feet from the front.

Plaintiff's car came to rest with its front end against a telephone pole 10 or 12 feet west of the point of impact and 1½ or 2 feet north of the north curb of Manchester. The rear end of plaintiff's car was in Manchester and it was headed in a northwesterly direction. Defendant's car stopped, headed in a southwesterly direction, astride the center line of Manchester.

Plaintiff testified that when she saw defendant's car approaching there were no other cars immediately behind it, or coming west in the lane next to the center lane. Her husband testified that there were no westbound cars other than defendant's in either of the two westbound lanes. Both plaintiff and her husband testified that at no time did defendant swerve his car to the left. The streets were dry at the time. Defendant testified that the first time he saw plaintiff's car it was 25 or 30 feet from him. He did not recall any cars to his left at the time.

Appellant contends that the court erred in refusing to sustain his motion for a directed verdict for the reason that the evidence was insufficient to submit the case to the jury upon any theory of negligence. In ruling this assignment we will confine ourselves to the issues submitted in respondent's verdict-directing instruction. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91. The issues submitted by said instruction were (1) negligent failure to keep a constant and careful lookout ahead for other vehicles on or near Manchester Road, particularly plaintiff's automobile, and (2) negligent failure to avoid the collision by swerving to the left after defendant could, in the exercise of the highest degree of care, have seen plaintiff's automobile. It is urged that no case was made for the reason that the proof failed to show the existence of any duty on the part of defendant to plaintiff, and that a finding of such duty, its breach, and a causal connection between such breach and plaintiff's injury, would rest on speculation and conjecture.

█ It is the duty of the operator of a motor vehicle to keep a careful or vigilant lookout ahead for other vehicles on or near the highway; and in order to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one, in the exercise of the highest degree of care for his own safety and the safety of others, would be expected to see under like or similar circumstances. Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21; Brown v. Toedebush Transfer, 354 Mo. 611, 190 S.W. 2d 239; Wright v. Osborn, 356 Mo. 382,

201 S.W.2d 935; Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378; Anthony v. Morrow, Mo.App., 306 S.W.2d 581; Riley v. Young, Mo.App., 218 S.W.2d 805. This duty is uniform and constant and, if the driver of a motor vehicle under such duty fails to see what is plainly visible, he is guilty of negligence and liable for its consequences. Riley v. Young, supra; Wright v. Osborn, supra; Rohmann v. City of Richmond Heights, supra; Roux v. Pettus, Mo.App., 293 S.W.2d 144.

■ We have reviewed the evidence in the light of the above rules and have concluded that there was ample evidence to justify submitting to the jury appellant's alleged negligence in failing to keep a constant and careful lookout ahead, and his alleged negligent failure to swerve to the left after he could have, by the exercise of the highest degree of care, seen the plaintiff's automobile.

It appears from the evidence that plaintiff stopped her automobile with its front wheels about a foot or foot and a half from the north curb of Manchester. This put the front end of the car even closer to the curb, and in a position where it could come in contact with the projection or overhang of the right front fender and body of any automobile traveling west on Manchester within a few inches of the curb. This is a legitimate inference that a jury might draw from the evidence. Lee v. Holland, Mo. App., 258 S.W.2d 30, loc. cit. 33. Plaintiff's car was in that position as defendant approached driving westwardly in the curb lane of Manchester. Its position was plainly visible to defendant when he was at least 130 feet east of the point of collision. Defendant drove west with his car not more than one foot from the north curb, and when he reached a point about 25 or 30 feet from plaintiff's car he turned slightly toward the right. The right front of defendant's car struck the left front of plaintiff's car near the headlight. The evidence shows there was no other traffic on either of the west-bound lanes at the time which would prevent defendant from swerving to the left. Defendant admitted he did not see plaintiff's car until he was 25 or 30 feet from it.

Clearly, defendant as he proceeded west on Manchester was under a duty to keep a constant and careful lookout ahead for vehicles in a position where he could have seen plaintiff's car in time to have swerved and avoided the collision. In our judgment the jury could reasonably have found a breach of duty on the part of defendant which was the proximate cause of the plaintiff's injuries without resorting to speculation and conjecture.

■ Appellant contends that plaintiff's Instruction No. 1 was erroneous for the reason that it was broader than the pleadings.

The pertinent portion of the petition reads as follows:

"3. That on or about 7th day of March, 1958 plaintiff was operating an automobile on a parking lot situated on the north side of Manchester Road, in the 9900 block thereof, *and before entering on to said Manchester Road she brought her said automobile to a stop;* that at said time and place and while in said stopped position the automobile she was operating was then and there struck by an automobile being operated by the defendant westerly along and upon Manchester Road, thereby causing plaintiff to sustain serious and permanent injuries. * * *" (Emphasis ours.)

Instruction No. 1 reads as follows:

"The Court instructs the jury that if you find from the credible evidence that at the time and place mentioned in the evidence, defendant was operating an automobile westwardly on Manchester, and if you find that at said time and place *plaintiff was operating an automobile in a southwestwardly direction on a parking lot situated on*

*the north side of Manchester and brought said automobile to a stop at or near the north curb of Manchester,* if you so find, and if you further find that while in said position plaintiff's automobile was collided with by defendant's automobile and that plaintiff was thereby caused to be injured, and if you find that defendant failed to keep a constant and careful lookout ahead for other vehicles on and near Manchester, and in particular the automobile which plaintiff was operating, and that such failure, if any, was negligence, and if you find that defendant, in the exercise of the highest degree of care, could have seen plaintiff's automobile in time thereafter, under the circumstances then and there existing, to have avoided the collision and injury to plaintiff, if any, by swerving his automobile to the left, but that defendant failed so to do, if you so find, and if you find that such failure, if any, was negligence, and if you find that such negligence, if any, directly caused said collision and plaintiff's injuries, if any, and if you find that plaintiff was exercising the highest degree of care for her own safety, then your verdict must be in favor of plaintiff and against the defendant." (Emphasis ours.)

It is urged by appellant that the instruction broadened the scope of the pleadings because the petition placed the automobile on the parking lot at the time of the collision, whereas, the instruction permitted the jury to find the automobile either on or off the highway at the time of the accident.

We find no merit to the contention made. The instruction, in effect, required a finding that plaintiff brought her automobile to a stop while operating it on the parking lot. Clearly the jury would not consider this as an authorization to find, as a prerequisite to a plaintiff's verdict, that the car was stopped while being operated on Manchester Road. This is especially true when we consider the evidence. Plaintiff's evidence was that the automobile was stopped on the parking lot. Defendant's testimony was that plaintiff's car just prior to the collision was driven off the parking lot into Manchester Road at a speed of 10 miles per hour and that it was still moving at the time of the collision. There is no evidence in the record that plaintiff's car was ever stopped on Manchester Road. When the instruction is read in the light of the evidence adduced it cannot be said the jury could have been misled into returning a verdict on a theory different from that presented by the petition.

■■ Appellant also complains that Instruction No. 1 is erroneous for failure to hypothesize essential facts upon which a verdict for plaintiff could be predicated. It is argued that the Instruction violates the principle of Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972 and Kick v. Franklin, 342 Mo. 715, 117 S.W.2d 284, in that it did not set forth essential facts such as the position of plaintiff's stopped automobile prior to the collision; whether any part of plaintiff's automobile was upon Manchester Road or the parking lot at the time of the collision; the distance separating the two automobiles when defendant could have seen plaintiff's stopped automobile; and the presence or absence of automobiles parked along the north curb of Manchester east of the point where plaintiff drove out of or intended to drive out of the parking lot. In our judgment the Instruction is not vulnerable in the respects claimed. The above cases are not to be construed as requiring a submission of evidentiary facts not necessary or essential to a finding upon the issue or issues specifically submitted. Knight v. Richey, supra.

The Instruction did submit facts essential in law to support a verdict for plaintiff, of which there was substantial evidence, and in our opinion the inclusion of further

evidentiary matters was not necessary to the validity of the Instruction.

 Plaintiff's final assignment is that this verdict is excessive. This necessitates a review of the medical testimony and other evidence bearing on the nature and extent of plaintiff's injuries. And in passing on this issue the court must accept as true all evidence and inferences therefrom favorable to the verdict and disregard all evidence which conflicts therewith. Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554; Biener v. St. Louis Public Service Co., Mo. App., 160 S.W.2d 780; Mickel v. Thompson, 348 Mo. 991, 156 S.W.2d 721; Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045; Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116 S.W.2d 27.

Plaintiff was thrown from the seat to the floor of the car and sustained severe bruises to various parts of her body. On March 10, 1958, she consulted Dr. Albert T. Styles, an Osteopathic physician. At that time she was suffering from pain in the right shoulder, and back. She stated that she had a very large bruise on her right shoulder, right side, hip, right leg and buttocks. Dr. Styles testified that on his first examination he found contusions over the head, the right tibia and lower end of fibula; contusions at the lower end of the left femur; restriction of head movements in all directions; soreness in the right shoulder and cervical area, mid-dorsal area and lumbosacral area. X-rays at that time revealed a flattening of the cervical curve which the doctor stated usually indicates a spasticity of the muscles in that area. The x-rays were negative for fractures or dislocations. The doctor prescribed sedatives and a drug to relieve the muscular spasm he found to exist. His records show that he treated plaintiff 19 times during 1958 and 19 times through July 1959. He further testified he saw her a few times thereafter, the last visit being two days before the trial (Sept. 21, 1959). On her last visit she complained of pain in the shoulder, back and right arm. There were no objective symptoms present at that time.

Plaintiff was examined by Dr. Jacques Paul Schaerer, a neurosurgeon on May 31, 1958. He found definite tenderness over the mid-lumbar area on the right side, which was the only tenderness he could find. He took x-rays of the cervical and lumbar spine. These showed a slight straightening of the lumbar spine, which, according to his testimony, meant that the muscles there were somewhat more tense than normal. He found there was no injury to plaintiff's nervous system. His conclusion was that plaintiff's injuries were limited to the soft tissues, such as muscles, ligaments, etc., and did not involve any portion of the nervous system. Dr. Schaerer saw plaintiff again in March, 1959. At that time there was no localized tenderness over the spine. She had some tender glands in her neck, the cause of which the doctor did not know. She gave a history of having lost weight, and still complained of discomfort and pain in her back and neck. The doctor again saw plaintiff on May 19, 1959, at which time there was still tenderness in the neck area and some tenderness in the lower back. He saw her for the last time on September 19, 1959. He stated that plaintiff said that the pain in her neck and back was at that time less severe.

Plaintiff testified that at the time of the trial her back was still hurting her; that she suffered a little pain in the neck, but not as much as she had previously experienced; that she has trouble with her wrist, and once in a while her legs hurt, but not as much at they formerly did; that she cannot do as much as she did before the accident; that when she tried to bowl, her neck, arm and back bothered her; that if she irons a lot her neck will hurt and that she tires out easily. Plaintiff spent approximately $100 for medicines during the year

prior to the trial. She has become obligated to pay Dr. Styles and Dr. Schaerer $100 each for their services. She also incurred liability for x-rays in the total sum of $195.

Prior to the accident plaintiff was employed as a clerk in a Rexall Drug Store, doing stock work, waiting on customers and running the cash register. She worked on a part-time basis of four hours on Mondays, Wednesdays, Thursdays and Saturdays and 9 hours on Sundays. Her net take home pay was $29.30 per week. With the exception of a few days in May 1958 she has been unable to work at the drug store since the accident. Plaintiff was 26 years old at the time of the trial.

■■ It is a fundamental rule that an Appellate Court should not disturb a verdict as excessive unless it appears excessive as a matter of law, that is, when the verdict is clearly for an amount in excess of the very most that the proof of damages would reasonably sustain. Rothweiler v. St. Louis Public Service Company, Mo. App., 224 S.W.2d 569; and then only when the verdict is grossly excessive to such a degree that it shocks the conscience of the Court. Mickel v. Thompson, 348 Mo. 991, 999, 156 S.W.2d 721; Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780; Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69; Montana v. Nenert, Mo.App., 226 S.W.2d 394. With these rules in mind, we have carefully considered the evidence presented by the record in this case and have concluded that the case is not one which calls for interference by this Court on the ground of excessiveness.

Finding no reversible error in the record, the judgment is affirmed.

WOLFE, J., and SAM C. BLAIR, Special Judge, concur.

RUDDY, J., not participating.