Dennis C. POLLARD, a minor, by Lorna Pollard, his natural guardian and next friend, Plaintiff-Respondent,

v.

Ellen DECKER, Defendant-Appellant.

No. 30821.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1962.

Motion for Rehearing or to Transfer to Supreme Court Denied March 19, 1962.

Charles F. Hamilton, F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant.

Theodore H. Hoffman and Joseph W. Toeniskoetter, St. Louis, for respondent.

BRADY, Commissioner.

The respondent, a minor, instituted this suit by his natural guardian and next friend, seeking to recover for personal injuries which he allegedly sustained when, as a pedestrian, he was struck by the appellant's automobile. Trial was before the jury and resulted in a verdict and judgment in favor of the respondent in the amount of $10,000. Upon the overruling of her after trial motions, the appellant filed and has perfected her appeal to this court. For the sake of clarity we will hereinafter refer to the parties by their designation at the trial.

The accident occurred on Park Avenue, which generally runs in an eastwardly-westwardly direction in the City of St. Louis. The street has room for four cars; that is, with a car parked at each curb there is room for an automobile to proceed in each direction. It was stipulated that the street is 36 feet wide at the point where the accident took place. It was about 5:20 or 5:30 in the afternoon and still daylight (August 21, 1959) with good visibility. The streets were dry.

■ The defendant contends on this appeal that: (1) the court prejudicially erred in giving of plaintiff's verdict directing instruction; (2) it prejudicially erred in its rulings on the objections to argument by both counsel concerning the plaintiff's failure to testify; (3) the trial court prejudicially erred in refusing to declare a mistrial when plaintiff's counsel injected plaintiff's congenital heart condition into the case during opening statement; and (4) the verdict was grossly excessive. In view of the issues thus presented and the verdict for the plaintiff, we will review the evidence in the light most favorable to the plaintiff.

Reviewed in such a light, the evidence shows that the plaintiff, 6 years old at the time of the occurrence, was seen by the witness Harrison, who was standing in the door of his pool hall, to walk along the south side of Park, going eastwardly, to a point just before he came in front of the witness; that this witness owns a 1949 green Pontiac automobile which was parked with the tires against the curb facing east in front of his establishment; that the plaintiff walked past the rear of this car to the front of it and turned to enter the street at a point about a foot from the bumper of the car; and that, still walking, the plaintiff passed in front of the car until he reached the left front of it where he stopped, put his hand on the fender of the car just above the headlight and looked westwardly, but did not then, or at any time, look eastwardly, the direction from which the defendant was approaching. Both this witness and the witness Janes, who was looking out of a window of his living room on the second floor of a building across the street from the pool hall, testified that plaintiff was stopped at that point for about three seconds. The evidence further shows that there was no eastbound traffic and the plaintiff then proceeded at a pace described by the witness Janes as a "trot" straight across the street and collided with the defendant's automobile at the front of the left rear fender at a place on the street about one foot across or to the north of the center line of Park. On impact the plaintiff's feet went out from under him and under the car, which ran over his legs. A portion of the defendant's deposition was read into evidence, in which defendant gave her speed as 25 m. p. h. and the witness Harrison testified that her automobile did not increase or decrease its speed nor sound its horn nor swerve from the time he first saw it, when the plaintiff was three or four feet from it, until the impact occurred. It further appeared from the testimony of the witness Nazworth that there was no other car parked on the south side of Park to the east of the Harrison Pontiac. It also appeared from the deposition of the defendant as read into evidence that the defendant's

automobile, its brakes, tires and horn were in good working condition and that there was good visibility at the time of the accident; that there was another automobile three car lengths ahead of her; that she was going about 25 m. p. h. "* * * when the accident happened * * *", that she never saw the plaintiff prior to the impact nor did she know whether he was running or walking; that she stopped the car about four car lengths from the boy as he lay in the street and ran back to him; that she stopped as soon as she could, it was not an emergency stop; and that she did not swerve or sound her horn before the accident.

The plaintiff's medical evidence was given by a Dr. Stephens, who first examined the plaintiff on January 11, 1960 and testified that the plaintiff had a healed fracture of the shaft of the right femur at the juncture of the middle and upper thirds; that there was moderate lateral and mild posterior bowing and a ¾ inch shortening of that leg; that the use of wires to hold the fracture in position had caused some scarring which had healed; that there was mild synovial thickening of the right knee, some limitation in motion of the knee; that there was a 28 degree angulation of the fracture; that there was a marked limp and that a resulting pelvic tilt would tend to cause arthritis to develop. Upon second examination, some ten months later, the testimony was that there was no longer any limitation in knee motion but the synovial thickening and slackness of the right collateral ligament were still present, as was a few degrees of limitation of external rotation of the plaintiff's right hip and the pelvic tilt and scoliosis found at the earlier examination. The doctor testified that even if an operation were performed, there would always be some shortening, although "* * * it may not be three quarters of an inch, probably be much less. * * *" The limitation of the hip motion and some slackness of knee ligaments would also remain. His opinion was that surgery would only reduce the severity of plaintiff's injuries and not result in complete correction of the conditions stated, which were permanent, and further gave as his opinion that natural improvement with respect to this shortening and other conditions would take place, but to what extent the shortening of the leg would improve he refused to say.

The plaintiff's mother testified that he was in the hospital from August 21, 1959 to September 11, 1959, and while there was in traction for three weeks; that plaintiff was in a cast for four months, and it was about a month after he got out of the cast before he began to walk; that she told him not to play baseball or football; and that he hobbles when he runs and doesn't run like other children, who don't want to play with him.

While plaintiff's counsel was making his opening statement, the following occurred:

"The evidence will show that at the time of this occurrence he was in reasonably good health. He had never sustained any disabling injuries to his legs. The evidence will show and it will be in the hospital record that the little boy had a congenital heart trouble which is not connected with this accident.

"MR. HAMILTON: Object to any such statement. It has nothing to do with the facts of this case.

"MR. HOFFMAN: That is what I was telling them."

The defendant's counsel, out of the hearing of the jury, then moved for a mistrial, which motion the trial court denied.

In his closing argument, the defendant's counsel began to comment upon the plaintiff's failure to testify. The occurrence was as follows:

"* * * These parked cars were there. Mrs. Hurley told you that they were there and she saw the little kid running out between these parked cars. He wasn't stopped in front of this headlight. This is strictly purely thumbo. And unfortunately we didn't get to hear

it from the little boy himself. Now, he is almost eight years old. Mr. Hoffman didn't see fit to put the little boy who was then seven years old or almost seven years old on the stand to tell us.

"MR. HOFFMAN: Your Honor, object to that. His deposition was taken by Mr. Hamilton.

"MR. HAMILTON: Just a moment, I will—

"MR. HOFFMAN: He should know what he knows and he could have called him himself. He knows what the boy knows about it.

"MR. HAMILTON: I object to that, if the Court please. The witness is not equally available to me as he is to the plaintiff himself.

"THE COURT: In view of the age of the boy, I sustain the objection."

In his closing argument, the plaintiff's counsel went to the same subject, and this occurred:

" * * * Now, he talks about, why didn't I put the boy on the stand. He had an opportunity and availed himself of that opportunity—

"MR. HAMILTON: If the Court please, object for the record. I would like to object—

"MR. HOFFMAN: I want my time saved.

"THE COURT: Very well.

"MR. HAMILTON: Objected to on the ground that the plaintiff himself was not equally available to me as a witness under the law as he was to Mr. Hoffman.

"THE COURT: Overruled, in view of the age of the plaintiff, objection will be overruled.

"MR. HOFFMAN: He knew what that boy had to say.

"MR. HAMILTON: Object to that. No evidence whatever that I knew what this boy would have to say.

"MR. HOFFMAN: Did you take his deposition?

"MR. HAMILTON: Object to that. No deposition evidence whatever.

"THE COURT: Sustained. No evidence as to what Mr. Hamilton knew about the boy's testimony.

"MR. HOFFMAN: Alright. Well, let it just be this. Had I put the boy on the stand, and you all heard from everybody in the case that the boy hadn't seen anything. He was looking the other way because had he seen the car coming, he wouldn't have certainly run out and tried to maim himself. Had I put him on the stand, Mr. Hamilton would have had his favorite argument in this case and every other case, sympathy, passion, sympathy, passion. Well, I want to try it aboveboard and I think that is the way the boy wants it treid (sic). I things he wants—

"MR. HAMILTON: Object to any such argument as to what I do in this case or other cases. I want to try it aboveboard just as much as Mr. Hoffman does.

"THE COURT: Very well; sustained."

 Plaintiff submitted upon primary negligence in failure to keep a lookout and to warn. The pertinent part of Instruction No. 1, plaintiff's verdict directing instruction, is as follows:

" * * * and if you further find that the defendant failed to keep a careful lookout ahead and laterally as she approached the place where said collision occurred and that such failure, if any, was negligence; and if you further find and believe that defendant, in the exercise of the highest degree of care, could have seen plaintiff upon

said street and should have known that there was a probable danger of collision between plaintiff and defendant's automobile, if you so find, in time thereafter, under the circumstances and conditions then and there existing, to have avoided the collision and injuries to plaintiff, if any, by sounding an effective warning of her approach, if you so find, but that defendant failed to do so, and if you further find that in so failing defendant failed to exercise the highest degree of care and was negligent * * *"

The defendant's attack upon the instruction is to the effect that if the instruction " * * * had related the required finding of ability of defendant to have seen plaintiff in a particular location such as standing by the left front fender of the Pontiac or to particular movements such as walking out in the street and stopping, as shown by plaintiff's evidence, the instruction might be considered sufficient." It is prejudicially erroneous, defendant contends, to give an instruction under the facts of this case which relates defendant's ability to have seen plaintiff only to the phrase " * * * upon said street * * *."

The defendant candidly admits that she can find no such ruling in the reported cases of this state, and neither were we able to do so. On the other hand, there are several cases that lead to exactly the opposite result. For example, in Asher v. Griffin, Mo. App., 342 S.W.2d 255 at loc. cit. [1, 2] pp. 257–258, this court, by Anderson, P. J., held:

"[1, 2] It is the duty of the operator of a motor vehicle to keep a careful or vigilant lookout ahead for other vehicles on or near the highway; and in order to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one, in the exercise of the highest degree of care for his own safety and the safety of others, would be expected to see under like or similar circumstances. (Citing cases.) This

duty is uniform and constant and, if the driver of a motor vehicle under such duty fails to see what is plainly visible, he is guilty of negligence and liable for its consequences. (Citing cases.)"

In that case, this court ruled upon the very point defendant here presents. The instruction in that case read, " * * * and if you find that defendant failed to keep a constant and careful lookout ahead for other vehicles *on and near Manchester* * * * ." (Emphasis supplied.) At loc. cit. [5, 6] p. 259 (342 S.W.2d 255) this court held that:

" * * * The above cases are not to be construed as requiring a submission of evidentiary facts not necessary or essential to a finding upon the issue or issues specifically submitted. Knight v. Richey, supra [363 Mo. 293, 250 S.W. 2d 972].

"The Instruction did submit facts essential in law to support a verdict for plaintiff, of which there was substantial evidence, and in our opinion the inclusion of further evidentiary matters was not necessary to the validity of the Instruction."

In Anderson v. Bell, Mo., 303 S.W.2d 93, an instruction which required the jury to find that Bell could have seen the automobile in which Anderson was a passenger " * * * being driven southwardly on Broadway * * *," was held sufficient when subjected to what was essentially the same attack which defendant here presses.

It should be pointed out that while as we here hold, and as held in the Asher and Anderson cases, this instruction did hypothesize the essential facts to be found to authorize a verdict for plaintiff upon the negligence submitted, this does not mean that the factual situation as shown by defendant's evidence and which would have authorized a verdict for her was not presented to the jury. Instruction No. 3, offered by defendant and given by the court,

covered the defendant's theory as substantiated by her evidence. This assignment of error is ruled adversely to the defendant.

■ The defendant's contention of prejudicial error regarding the trial court's action in sustaining an objection to his attempt to comment on the failure of the plaintiff to testify has no merit. Plaintiff was six years of age when the accident happened, and was seven years of age at the date of trial. Section 491.060 RSMo 1959, V.A.M.S., provides:

> "The following persons shall be incompetent to testify:
>
> \* \* \* \* \* \*
>
> "(2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly; \* \* \*."

It has been repeatedly held that it is the duty of the trial judge to determine the competency of witnesses, and when his decision is based on sufficient examination and observation of the child as to its competency, it can only be set aside when he has abused his discretion. State v. Jones, 360 Mo. 723, 230 S.W.2d 678. This determination is made by examination out of the jury's presence. Hildreth v. Key, Mo.App., 341 S.W.2d 601. In the instant case, no such examination was requested by either party or made by the court. In State v. Groves, Mo., 295 S.W.2d 169, it was held that while there is no precise age at which a child can be considered competent, § 491.-060(2), supra, precludes any presumption that an infant under the age of 10 years is capable of receiving just impressions of facts or of relating them truly. See also Baker v. Baker, Mo.App., 319 S.W.2d 11 at loc. cit. p. 16. Accordingly, until there has been a judicial inquiry and determination that a child under 10 years old has been shown to be capable of receiving just impressions of fact and of truly relating them, such a child as the plaintiff is incapable of testifying. As we understand it, the defend-

ant does not really contend otherwise but insists that if the plaintiff wants to avoid comment upon his failure to testify, the plaintiff should have had this inquiry as to his competency as a witness made, and that since the plaintiff did not do so, comment is allowable. We cannot agree. Where a party is incompetent absent a showing of competence, or, put another way, declared to be so by statute absent a showing why the statute is inapplicable to that plaintiff, as plaintiff was in this case under the provisions of § 491.060(2), supra, then no comment can be made upon the failure of that party to testify. The disability under which the plaintiff labors is one of statute and not of his own choosing or the result of his own actions, and thus he should not, as defendant urges, be compelled to substantiate the application to himself of the statutory disability as a witness provided by § 491.-060(2), supra. The very basis of the rule allowing comment upon a party's failure to testify illustrates why that rule should not encompass those who are incompetent under the provisions of § 491.060(2), supra. Generally in a civil action, counsel may comment upon a party's failure to testify if there is a basis for drawing an unfavorable inference against a party on account of his failure to testify because he had knowledge of the facts and circumstances vitally affecting the issues on trial. Beasley v. Athens, Mo.App., 284 S.W.2d 62. In the instant case, there can be no presumption that the plaintiff had such knowledge, or that if he had knowledge, could truly relate it. § 491.060(2), supra; State v. Groves, supra.

■■ As to the trial court's action with regard to overruling the objection by defendant's counsel when plaintiff's counsel attempted to go into this same matter, the trial court had just previously held, correctly as we herein rule, that no comment was to be made upon the subject, and in doing so sustained the objection made by plaintiff's counsel. Yet plaintiff's counsel then attempted to go into the same matter and the trial court overruled defendant's ob-

jection. This was erroneous, both because it went into what was previously ruled to be a closed subject, and because it is obvious that plaintiff was not as available to the defendant as to the plaintiff. Block v. Rackers, Mo., 256 S.W.2d 760, at loc. cit. page 764. It requires no citation of authority to substantiate that only when it is prejudicial does an erroneous ruling require reversal. We have set out the entire occurrence in the statement of facts to illustrate that even though the trial court erroneously overruled defendant's objection, upon a careful consideration of this entire transcript we are convinced that this action in the trial court did not constitute prejudicial error.

 There is no merit in defendant's contention that the trial court erred in its refusal to declare a mistrial when plaintiff's counsel during opening statement mentioned the plaintiff's congenital heart condition. As recited in this summary of facts at the beginning of this opinion, the plaintiff's counsel in doing so stated that the congenital heart trouble " * * * is not connected with this accident." Moreover, a matter such as this lies within the exercise of proper discretion by the trial court who heard the statement given in the inflection of voice which was used, and with respect to the other circumstances surrounding it. The matter was not again mentioned during the trial. It should also be noted that defense counsel did not ask for any other relief than a mistrial. He did not request the statement to be stricken, or that the jury be instructed to disregard it.

 The defendant contends that the verdict was grossly excessive. An appellate court should not disturb a verdict as excessive, unless it is for an amount in excess of the very most that the proof of damages would reasonably sustain and then only when it is so grossly excessive of that amount that it shocks the conscience of the court. Asher v. Griffin, supra. In determining excessiveness, the reviewing court views the evidence in the light most favorable to the plaintiff. Appelhans v.

Goldman, Mo., 349 S.W.2d 204. A consideration of the evidence of the plaintiff recited herein which bears upon this question, when viewed in the light we are required to take of that evidence, convinces us the defendant's contention is without merit.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

RUDDY, Acting P. J., WOLFE, J., and SAM C. BLAIR, Special Judge, concur.

ANDERSON, P. J., not participating.