Patricia GOODSON, Respondent,

v.

M. F. A. INSURANCE COMPANY, Appellant.

No. 24837.

Kansas City Court of Appeals, Missouri.

June 3, 1968.

E. E. Thompson, Thomas A. Sweeney, Thomas J. Conway and Robert G. Russell, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for appellant.

John M. Kilroy and Don B. Roberson, Kansas City, Shughart, Thomson & Kilroy, Kansas City, of counsel, for respondent.

HOWARD, Presiding Judge.

This is a suit for personal injuries growing out of an intersection collision, brought by the minor respondent who was a passenger in one of the colliding automobiles, against the appellant, M.F.A. Insurance Company, under uninsured motorist provisions of a policy issued by it to the driver of the car in which respondent was a passenger, and against such host driver. From a verdict in favor of respondent in the amount of $5,000.00, appellant M.F.A. has duly appealed. The verdict was in favor of the host driver who relied on the Kansas guest statute. We shall refer to the parties as they appeared below, and in view of the fact that there is no appeal from the verdict in favor of the host driver, we shall use the term "defendant" as referring to M.F.A. alone.

This collision occurred about 6:00 P.M. on November 14, 1964, at the intersection of State Highways 10 and 7, in Johnson County, Kansas. Plaintiff was a passenger in an eastbound automobile driven by one Turner which collided with an automobile driven in a southerly direction by one Koontz who is alleged to be an uninsured motorist. There were seven people in the Turner car but only plaintiff and the driver Turner appeared as witnesses in the trial of this case. No evidence was adduced from any investigating officer or any other witnesses to the crash, although it appears at least inferentially that there were other people in the vicinity at the time of the collision.

As the Turner car approached this intersection from the west, Kansas Highway 10 (hereinafter referred to as K–10) runs in a general east and west direction. It is a two-lane, undivided highway and there is a stop sign requiring eastbound traffic on K–10 to stop before entering the intersection with K–7. At this intersection K–7 is a divided highway with pavement for two lanes of traffic proceeding south and for two lanes of traffic proceeding north, divided by a medial strip of undisclosed width. One desiring to travel on east on K–10 from this intersection must cross the two southbound lanes of traffic on K–7; make a left turn into the two northbound lanes of K–7 and travel north a short distance before making a right turn onto K–10 to proceed eastwardly. As the Turner car stopped at

the stop sign on the west side of K–7, it was facing a street entering K–7 from the east which was not marked as a highway but which would physically permit traffic from K–10 to go straight across K–7 and proceed directly east.

Plaintiff was an 18 year old girl at the time of the trial, February 1, 1967 (some 26½ months after the wreck). She was riding in the middle of the back seat of the Turner automobile with one woman riding between her and the left rear door. The point of impact was at approximately the place where the left rear door closes. Plaintiff was thrown out of the automobile and although she stated on direct examination that the Turner car was in the intersection at the time of impact, she repeatedly stated on cross-examination that she had no recollection of anything that happened after the car started to pull away from the stop sign and did not know the location of the point of impact.

Plaintiff relies entirely on the testimony of Mr. Turner to show how the accident occurred and the location of the vehicles at the instant of impact. Mr. Turner was first called by plaintiff and examined as an adverse party. This examination consisted almost entirely of leading questions to which the witness answered yes or no. Mr. Turner was then cross-examined by the attorney for M.F.A. This examination likewise consisted almost entirely of leading questions to which the witness answered yes or no. Mr. Turner was then examined by his own attorney and this examination without objection consisted primarily of leading questions to which the witness answered yes or no. It appears that the witness would answer "yes" to almost any question. Therefore, his testimony is confused and indefinite. Defendant M.F.A., on this appeal, contends that such testimony by Mr. Turner was so self-contradictory so as to be without probative value. In view of this contention, we have carefully studied and restudied the transcript and the contentions of the parties as set out in their briefs. From this study we have concluded that the jury could reasonably find the following facts from Mr. Turner's testimony. Mr. Turner and the passengers in his car were returning from a football game in Lawrence, Kansas. They were proceeding east on K–10 and intended to make the jog north on K–7 and continue east on K–10 into Missouri. As Mr. Turner approached the intersection of K–7 and K–10, he stopped at the stop sign; he looked north on K–7 and saw no southbound traffic; he looked across the intersection and observed an automobile approaching from the east on the street directly facing him; he looked to his right (south on K–7), and watched three or four automobiles proceed north past the intersection. Although Mr. Turner did give an affirmative answer to leading questions assuming that he again looked north (to his left) a consideration of all of his testimony on the subject would indicate that he then gave a quick glance all around, including to the north, and did not see any oncoming vehicles from the north. He started forward with his signal lights indicating a left turn. His car had a stick shift and he did not shift out of low gear. He estimated that his speed did not exceed 3 to 5 miles an hour. After he had gone some 18 to 20 feet from the stop sign, he for the first time saw the headlights of a car coming from the north. This car was about 100 feet away when he first saw it. He immediately put on his brakes and tried to stop as quickly as he could and there was then a crash. Turner testified that the other car was coming toward him at "Somewhat of an angle * * * southwesterly." Turner never did see the other car off of the pavement of K–7. Turner was thrown from the car and did not know the exact location of the cars after the crash. The speed limit on K–7 was 55 miles per hour and Turner "assumed" that the other car was going about 55 miles an hour although he was not certain.

As heretofore indicated, no other evidence was adduced as to how the accident occurred or the relative location of the two vehicles prior to and at the point of impact.

The mooted question is the exact location of the Turner vehicle at the instant of impact. Mr. Turner gave an affirmative answer to various leading questions showing various locations. His testimony was that the stop sign was 15 feet back from K–7. He testified that he had traveled 18–20 feet from the stop sign at the time of impact. After repeatedly stating that he stopped at the stop sign he then testified that he stopped about 12 feet back (west) of the stop sign. He testified that he was in the south half of K–10 and 2 to 3 feet south of the center line; that he was west of K–7 at the time of impact and thought he had stopped because he applied his brakes. He stated that his car was almost to K–7 but he did not know how far his car was from K–7 at the time of impact. He stated that he was not on K–7 at the time of impact but was in the intersection. It appeared that Turner considered that the intersection encompassed something more than the pavement which constituted a part of both K–7 and K–10. He finally said that he did not know exactly what was included within the intersection. He stated that he imagined that he could see 300 feet to the north on K–7 from the position where he stopped. He later stated that he could see 300 yards to the north or at least 300 feet.

Turner gave a statement describing this collision to the sheriff of Johnson County, Kansas, approximately 10 days after the accident. It was in his own handwriting and stated that "I stopped at the stop sign at K7 & K10. I looked to the North on K7 for oncoming traffic and all was clear. I also was watching for cars coming from the East and from the South on K–7 that might be going West on K–10. I was moving onto K–7 with my directional signal indicating a left turn on K–7. I was in intersection when a car from the North on K–7–K10 and traveling in the inside lane was upon me. He was very close when he applied his brakes."

Turner also admitted that he did not know the exact location of his vehicle at the instant of impact but in his testimony at the trial, as contrasted to matters of impeachment from his deposition and the above statement, he repeatedly stated that he was just west of or just getting onto the west edge of the pavement of K–7.

Since no point is made of the amount of the verdict, we do not need to review the evidence as to plaintiff's injuries. Suffice it to say that she received a broken jaw and other fractures but has made a very good recovery. Any further evidence required will be set forth as it becomes necessary.

On the appeal, defendant contends that the trial court erred in overruling its motion for directed verdict because there was insufficient evidence to show that the Koontz automobile was uninsured and because there was insufficient evidence to show negligence on the part of Koontz; that there was error in admitting evidence in support of the contention that the Koontz automobile was uninsured; that the trial court erred in the giving of Instruction No. 2 because there was not sufficient evidence to support the giving of such instruction on the issue that the Koontz automobile was uninsured; that Koontz was negligent in failing to keep a look-out and failing to keep his vehicle on the right half of the road.

■ We shall consider the claimed infirmities in Instruction No. 2 first. This instruction reads as follows:

"Your verdict must be for plaintiff and against defendant M.F.A. Insurance Company if you believe:

First, that the Koontz automobile was an uninsured automobile at the time of the collision, and

Second, that plaintiff was insured under uninsured motorist coverage with the defendant, M.F.A. Insurance Company, and

Third, that Robert Koontz either:
 failed to keep a careful lookout,
 or failed to keep his vehicle on

the right half of the roadway, and

Fourth, that Robert Koontz's conduct in any one or more of the respects submitted in paragraph Third was negligent, and

Fifth, such negligence directly caused or directly contributed to cause damage to plaintiff."

This instruction submitted negligence on the part of the alleged uninsured motorist Koontz in (1) failure to keep a careful lookout, and (2) failure to keep his vehicle on the right half of the roadway. As to failure to keep a lookout, the jury could find that Mr. Turner's unimpeached testimony was that he, in fact, saw the Koontz car when it was 100 feet away and that therefore Koontz could have seen the Turner car at least from that distance. Hickerson v. Portner, Mo., 325 S.W.2d 783. Further, Turner's unimpeached testimony was that he could see to the north from the stop sign a distance of 300 yards or at least 300 feet. If so, Koontz could have seen the Turner car from that distance away. The jury could have found that the impact occurred just west of what would be a continuation of the west edge of the paved portion of K–7; that he had two unobstructed southbound lanes of K–7 on which he could travel without colliding with the Turner vehicle; that he did not deliberately and intentionally collide with the Turner vehicle and that therefore he failed to keep a lookout and because of such failure wandered to his right into the vehicle, which collision he could have avoided.

Defendant relies on Zalle v. Underwood, Mo., 372 S.W.2d 98, Chandler v. Mueller, Mo., 377 S.W.2d 288, and Mt. Olivet Baptist Church v. George, Mo., 378 S.W.2d 549, as supporting its contention that the evidence is insufficient to justify the submission of Koontz's negligence for failure to keep a lookout. The facts of those cases are in no way comparable to those in the case at bar. In Zalle, the plaintiff made a left turn through a gap in a line of cars, stopped for a red light in the center lane of a street and was hit by defendant who was coming up in the outside lane. The court pointed out that there was no evidence from which the jury could find that defendant could have seen the gap in the line of cars or plaintiff making a left turn in time to have avoided the accident and therefore it was error to give a lookout instruction. In Chandler, the issue was which car was over the center line of the street at the time of collision. There was no direct evidence that plaintiff failed to keep a lookout and such failure could not be inferred from the conflicting evidence as to the relative location of the vehicles prior to the time of collision. In Mt. Olivet, a large tractor-trailer rig made a right turn at a street corner and collided with an automobile on its right. The truck driver never saw the car and there was absolutely no evidence as to where the car was at any time or where it came from or how it came into collision with the trailer. (It was apparently stolen and the driver disappeared.) The court held that the jury could only convict the truck driver of negligence in failing to see the car by resorting to speculation. These cases are of no help whatever in the case at bar. Here Koontz was traveling south on K–7 and the Turner car was proceeding slowly east from the stop sign on K–10. The jury could find that Koontz could have seen the Turner car for 300 feet or more which would have given him ample time to turn the steering wheel slightly to keep his car on the road and thus avoid the collision. See Asher v. Griffin, Mo.App., 342 S.W.2d 255.

■ Defendant M.F.A. contends that because of the inconsistencies and contradictions, Turner's testimony has no probative value and cannot support these conclusions. In this connection, M.F.A. relies on such cases as Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644; Crandall v. McGilvray, Mo., 270 S.W.2d 793; and Stephens v. Thompson, Mo., 293 S.W.2d 392. We have no quarrel with these cases wherein they hold that a witness whose testimony at the

trial is so contradictory as to be self-destructive, furnishes no foundation to support a finding essential to the plaintiff's cause of action. However, that is not the situation in the case at bar. Turner was not certain of the minutely exact location of his vehicle at the instant of impact but he repeatedly and consistently testified that he was just entering on or not quite to the west edge of the southbound pavement of K–7. This was impeached by prior statements but we believe that under the authority of such cases as Loveless v. Locke Distributing Company, Mo., 313 S.W.2d 24, and Russell v. Casebolt, Mo., 384 S.W.2d 548, 11 A.L.R.3d 1144, Turner's testimony was not so inconsistent as to be self-destructive and that the impeachment thereof went to the weight of the testimony and the credence to be given it by the jury. Even as impeached, we conclude on the basis of these authorities that such testimony was sufficient to support a jury finding that the point of impact was just west of the west line of the pavement of highway of K–7.

■ Defendant next contends that there was no basis for the submission in Instruction No. 2 that the jury could find Koontz negligent by reason of failure to keep his vehicle on the right half of the roadway. This instruction is based on Section 8–537, Kansas Statutes Annotated, which provides that all vehicles shall be driven upon the right half of the roadway. After this general provision there are exceptions to this requirement set out in the statute, one of which excepts a roadway designated and signposted for one-way traffic. It is apparent that the west half of K–7, being part of a divided highway, was designed for one-way southbound traffic. However, there is no evidence that it was so "signposted". In any event, plaintiff does not contend that the Koontz automobile was on the left side of Highway K–7. Her contention is rather than Koontz was negligent in allowing his vehicle to be on the left or south half of K–10 at the point of impact. Defendant makes some contention that this negligence was not pleaded and that plain-

tiff was improperly allowed to amend the pleadings and introduce this statute. However, in the view we take of the case, we do not need to determine the issue. As heretofore stated, the point of impact could be found to be a very few feet west of the west line of the southbound pavement on divided Highway K–7. This would be a point which would normally constitute a part of the shoulder of K–7. It was also part of the roadway of Highway K–10. In other words, it was in an area common to both highways. There is no showing that Koontz was attempting to operate his vehicle on K–10. Turner as a witness refused to express a belief that Koontz was attempting to make a right-hand turn onto K–10. The evidence was that there was what is described in the testimony as a "ramp" north of the point where the impact occurred which provided an easy right-hand turn for traffic desiring to go west from K–7 onto K–10. Thus, there was no evidence from which the jury could find that the Koontz vehicle was, in fact, being operated on K–10 as contrasted to Highway K–7. Under such circumstances there was no right-hand or left-hand side of K–10 in relation to the operation of the Koontz vehicle. The only thing the jury could find from the evidence was that as the Koontz vehicle proceeded south it deviated from the paved portion of Highway K–7 onto the shoulder (which was paved as part of K–10) and into collision with the Turner vehicle. Therefore, the statute relied upon by plaintiff for this part of Instruction No. 2 has no applicability to the situation revealed by the evidence. It is so inappropriate that it could only be confusing to the jury. The laconic way in which this matter was handled in closing argument would tend only to add to the confusion, not to clarify it. It is significant that plaintiff cites no cases and, in fact, makes no clearly complete and logical argument in support of the applicability of the statute to the fact situation involved. We therefore conclude that it was error to include in Instruction No. 2 a provision permitting the jury to find that Koontz was negligent for failure to keep

his vehicle on the right half of the roadway. Such error requires that the cause be reversed and remanded for new trial.

Defendant also contends that there was not sufficient evidence to support a finding of the jury as required by Instruction No. 2 that the Koontz automobile was uninsured. Since this problem may arise on retrial, we comment thereon. Plaintiff supports his position on this issue by relying primarily upon admissions of the defendant. Prior to trial the plaintiff filed a request for admissions and in response thereto defendant admitted that "At the time of the casualty in question, the plaintiff was an insured under a policy of insurance, then in force and effect, and provided among other benefits, uninsured motorist's protection, as that term is used and defined in said policy." M.F.A. also admitted "That the insured under the defendant's policy included among other parties named, any other person while occupying a vehicle insured by the defendant." However, defendant refused to admit that Koontz was an uninsured motorist as the term was used and defined in the insurance policy stating that it was "without knowledge as to whether or not Robert O. Koontz was an uninsured motorist." The policy of insurance and its provisions are not in evidence. Plaintiff seems to argue that since defendant admitted that plaintiff was an insured under the uninsured motorist provision, this included an admission that Koontz was uninsured. We do not believe that such inference is justified. We cannot say that such an inference is reasonable in face of the specific denial of knowledge as to whether or not Koontz was uninsured, given in response to the direct question. Since the provisions of the specific policy in question are not contained in the record, we cannot find that they are different from those which are normally included in such coverage. Under the usual provisions of such coverage, all passengers in the insured vehicle are "insureds" under the uninsured motorist coverage by reason of being passengers, but that fact alone does not give rise to a cause of action any more than the named insured has a cause of action for property damage when no damage has been done to his property. As part of his cause of action the named insured must prove damage to his insured property. Under the circumstances of the case at bar, plaintiff, as part of her cause of action under the uninsured motorist coverage, must prove among other things, injury; that such injury resulted from negligence of the alleged uninsured motorist and that such motorist was in fact uninsured. See Hill v. Seaboard Fire & Marine Insurance Co., Mo.App., 374 S.W.2d 606. Consequently, we conclude that defendant's admission that plaintiff "was an insured" did not constitute an admission that Koontz was in fact uninsured. It follows therefore that as part of her cause of action, plaintiff must on retrial adduce evidence from which it can be found that Koontz was in fact uninsured.

In the case at bar, plaintiff introduced the testimony of her father that one Johnson, whom he described as "an M.F.A. adjuster", stated to him that M.F.A. had made an investigation and determined that Koontz was uninsured and that it was unnecessary for the father to make any investigation of this subject. Defendant objected to this evidence and now contends that it is not admissible and that even if properly admitted, it is not sufficient to support a finding that Koontz was, in fact, uninsured. In view of the fact that there must be a retrial of this case and that there undoubtedly is in existence and available substantial proof on this issue which plaintiff failed to adduce in mistaken reliance on defendant's admission, we do not deem it necessary to pass upon these issues. Undoubtedly, they will not arise in the same circumstances in the new trial.

For the reasons heretofore indicated, the judgment below is reversed and the case is remanded for new trial.

All concur.