DAIRYLAND INSURANCE
COMPANY, Plaintiff,

v.

Jalena Wilson HOGAN,
Defendant–Appellant,

and

Virginia O. Wilson, Defendant,

and

Honorable Ike N. Skelton, Defendant,

and

Jimmie Frank Danforth, Defendant,

and

Aetna Casualty and Surety Company,
Intervenor–Defendant,
Crossclaimant–Respondent.

No. 61942.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1980.

Rehearing Denied Oct. 15, 1980.

S. W. Longan, III, Kansas City, for defendant–appellant Hogan.

John C. Milholland, Harrisonville, for Skelton.

Stephen G. Scholl, Kansas City, for intervenor–defendant, crossclaimant–respondent.

DONNELLY, Judge.

This appeal requires construction of § 379.203, RSMo 1978, the Missouri "uninsured motorist" statute.

The case was transferred to this Court by the Western District of the Missouri Court of Appeals "for the purpose of reexamining the existing law." Rule 83.02.

On April 7, 1977, a collision occurred between a Mercury automobile owned by Virginia O. Wilson and an Oldsmobile automobile owned by William W. Shirley. The Mercury was being operated by Jalena Wilson Hogan with the permission of its owner. Ike Skelton was a passenger in the Mercury. The Oldsmobile was being driven by Jimmie Frank Danforth. There is a dispute as to whether the Oldsmobile was being driven with the permission of its owner.

An Aetna policy of insurance was in effect on the Mercury. It provided liability coverage and uninsured motorist coverage.

A Dairyland policy of insurance was in effect on the Oldsmobile. It provided liability coverage and uninsured motorist coverage.

Dairyland filed a petition for declaratory judgment in the Circuit Court of Cass County asserting that Danforth was not driving the Oldsmobile with permission of Shirley. Aetna intervened and asserted that because the Dairyland policy provided liability coverage on the Oldsmobile the Oldsmobile was not an "uninsured motor vehicle" and Hogan and Skelton could not recover damages for their injuries under the Aetna uninsured motorist coverage.

The trial court, feeling bound by the opinion in *Miles v. State Farm Mut. Auto. Ins. Co.*, 519 S.W.2d 378 (Mo.App.1975), entered judgment in favor of Aetna. An appeal was taken to the Western District of the Court of Appeals, which dismissed the appeal of Jalena Wilson Hogan, and then transferred the case to this Court.

The Missouri "uninsured motorist" statute (§ 379.203, *supra*) reads in pertinent part as follows:

"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. Provisions affording such insurance protection against uninsured motorists issued in this state prior to October 13, 1967, shall, when afforded by any authorized insurer, be deemed, subject to the limits prescribed in this section, to satisfy the requirements of this section."

"With minor alterations of negligible significance, at least thirty–five states have adopted the [above provisions]." A. Widiss, *A Guide to Uninsured Motorist Coverage* § 3.2 (1969). Under these statutory provisions, "it is theoretically possible to deny the uninsured motorist protection to a person injured through the negligence of an uninsured motorist, because the *vehicle* through which the injury is inflicted is 'insured' even though the particular driver is not." Davis, *Uninsured Motorist Coverage: Some Significant Problems and Developments*, 42 Mo.L.Rev. 1, 6 (1977).

"The theory behind uninsured motorist coverage assumes a negligent driver who, although uninsured, is legally responsible for the insured's personal injuries: that is, a defendant in the traditional sense whose negligence has caused personal injuries and who has no affirmative defenses available to avoid liability. In such a situation, if the injury–producing motorist has no liability insurance, the insurance company of the injured plaintiff agrees, by virtue of the

uninsured motorist coverage, to pay the plaintiff (its own insured) the personal injury damages attributable to the negligent act of the uninsured motorist (up to a certain maximum amount, typically $10,000.)" Davis, *supra*, at 2–3.

■ Of course, a general rule of statutory construction is that this Court must give effect to a statute as it is written. However, we must also recognize the "cardinal rule that 'the intention of an act will prevail over the literal sense of its terms' (Sutherland on Statutory Construction, sec. 219), otherwise it might lead to absurd consequences, which could but be the result in this case if the statute be construed according to its strict letter." *State ex inf. Folk v. Talty,* 166 Mo. 529, 559–60, 66 S.W. 361, 369 (1902).

Professor Davis would articulate the intention of the General Assembly by dealing with the term "uninsured motor vehicle" as follows: "Although the motor vehicle is the instrument through which the tortfeasor inflicts harm, it is not the *vehicle* which is held liable but the *operator.* Therefore, a more precise term would be 'vehicle being operated by a person whose legal responsibility for damages negligently inflicted is not covered by any liability insurance provision.' This would more clearly and accurately reflect that the policy provides a source of compensation for someone negligently harmed by an uninsured motorist." Davis, *supra*, at 6. We agree. In our view, the Aetna policy issued to Virginia O. Wilson accurately reflects what the General Assembly intended.

The "uninsured motorists" portion of the Aetna policy defines an "uninsured automobile", in pertinent part, as "an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, \* \* \*."

The "uninsured motorists" portion of the Aetna policy provides that the term "uninsured automobile" shall *not* include "an insured automobile or an automobile furnished for the regular use of the named Insured or a relative \* \* \*."

■ In this case, Skelton should recover under the "uninsured motorists" provisions of the Aetna policy for any damages negligently inflicted by Danforth if Danforth's operation of the Oldsmobile was not covered by a liability insurance provision. *See Goodson v. M. F. A. Ins. Co.,* 429 S.W.2d 294, 300 (Mo.App.1968); *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 609 (Mo.App.1963).

We note that the plaintiff in *Miles, supra,* had he been insured under the Aetna policy, could not have recovered under its "uninsured motorists" coverage because by its terms that coverage does not extend to automobiles insured under liability coverage. *Cf. Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137 (Mo. banc 1980).

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

All concur.